(No. 47635.—■■■■■■■■)

JAMES STRYKER *et al.*, Appellants, v. THE VILLAGE OF OAK PARK *et al.*, Appellees.

*Opinion filed January 26, 1976.—Rehearing denied March 25, 1976.*

CREBS, J., took no part.
RYAN, J., dissenting.

Stanley H. Jakala, of Berwyn, for appellants.

Arthur C. Thorpe, of Klein, Thorpe, Kasson and Jenkins, of Chicago, for appellees.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiffs, James Stryker and Walter Woitovich, police officers of the Village of Oak Park, filed this action in the circuit court of Cook County against defendants, the Village of Oak Park and its Board of Fire and Police Commissioners, seeking a declaratory judgment that certain ordinances of the defendant village were invalid, and for other relief. The circuit court allowed defendants' motion for judgment on the pleadings and dismissed the cause with prejudice. Plaintiffs appealed. We allowed their motion filed pursuant to Rule 302(b) that the appeal be taken directly to this court.

Prior to April 1974, the defendant village of Oak Park (hereafter defendant), in accordance with the provisions of division 2.1 of article 10 of the Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 10—2.1—1 et seq.), had created a Board of Fire and Police Commissioners. On April 15,

1974, the Board of Trustees of the defendant amended chapter 36 of the Village Code to provide:

"Sec. 36.1  Composition; Office of Policeman
                    Created; Residency.

The Police Department of the Village of Oak Park is hereby created and established. It shall consist of a chief of police, three (3) deputy chiefs of police and such other officers and personnel as shall be determined by the President and Board of Trustees in the annual Appropriation Ordinance. The position of captain in the Police Department is eliminated effective at such time as the incumbents, as of January 1, 1974, no longer hold that position.

Police officers appointed after October 1, 1973, shall not be required to comply with the residency requirements of Article 3—14—1 of the Illinois Municipal Code during the probationary period of one year plus an additional six months. Said police officers must become residents of the Village of Oak Park within said 18 month period."

"Sec. 36.8  Appointment and Suspension of Members by
                    Board of Fire and Police Commissioners.

The Village Manager is authorized to appoint, suspend or discharge the chief of police and the three deputy chiefs of police. The power of appointment, discharge or suspension of all other officers of the police department shall be in the board of fire and police commissioners of the village, heretofore created and now acting pursuant to the provisions of the Illinois Municipal Code. In the event the Village Manager discharges the chief of police or a deputy chief of police, said officers shall revert to their permanent ranks, if any, in the police department as established under the Fire and Police Commission Act. A deputy chief of police shall be appointed solely from the officers of the Oak Park Police Department."

On October 15, 1974, article 16 of chapter 2 of the Village Code was amended to provide:

"Section 2.110 — Adoption of State Code.

Division 2.1 of Article 10 of Chapter 24 of the Illinois Revised Statutes, entitled Board of Fire and Police Commissioners, is adopted by reference, provided that Section 10—2.1—3 of said State Act is not adopted and

further provided the provisions of Section 36.8 of this Code shall supersede the provisions of said State Act.

Section 2.111 — Qualifications — Oath.

The members of the Board of Fire and Police Commissioners must be residents of the Village of Oak Park and will be considered officers of the Village. The members of the Board of Fire and Police Commissioners shall file an oath of office with the Village Clerk.

No person may serve on the Board of Fire and Police Commissioners who is an officer or precinct captain of any established political party, as defined in the Election Code. No person shall be appointed as a member of the Board of Fire and Police Commissioners who is related, either by blood or marriage, up to the degree of first cousin to any elected official of the Village of Oak Park. This section shall supersede Sec. 10—2.1—3 of said State Act."

Section 10—2.1—3 of the Municipal Code, to which the ordinance referred, enumerated qualifications for a member of the Board of Fire and Police Commissioners similar to those in section 2.111 of defendant's ordinance and in addition provided:

"The members of the board *** shall file *** a fidelity bond in such amount as may be required by the governing body of the municipality.

No person holding a lucrative office under the United States, this state or any political subdivision thereof, or a municipality, shall be a member of the board of fire and police commissioners or the Secretary thereof. *** No more than 2 members of the board shall belong to the same political party existing in such municipality at the time of such appointments ***."

Plaintiffs contended in the circuit court, and on appeal, that defendant was not empowered to enact ordinances that were in conflict with section 10—2.1—4 of the Municipal Code, which concerns appointment and certification of officers and members of fire and police departments. Citing *Bovinette v. City of Mascoutah,* 55 Ill.2d 129, they contend further that a police chief may be discharged only in the manner provided in section 10—2.1—17 of the Municipal Code. Citing *Cummings v.*

*Daley,* 58 Ill.2d 1, plaintiffs contend that in altering the composition of the Board of Fire and Police Commissioners, defendant attempted an impermissible "attack upon proper administrative review which administrative review cannot be affected by home rule power." Finally, citing *City of Chicago v. Pollution Control Board,* 59 Ill.2d 484, plaintiffs contend that the ordinances were invalid for the reason that they must, but did not, conform with the minimum standards established by the General Assembly.

It is defendant's position that as a home rule unit it was empowered to enact the challenged ordinances.

Section 6(a) of article VII of the Constitution of 1970 provides:

> "(a) *** Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs ***."

Since the adoption of the Constitution of 1970 this court has consistently held that an ordinance enacted by a home rule unit under the grant of power found in section 6(a) supersedes a conflicting statute enacted prior to the effective date of the Constitution. (*Paglini v. Police Board,* 61 Ill.2d 233; *Peters v. City of Springfield,* 57 Ill.2d 142; *People ex rel. Hanrahan v. Beck,* 54 Ill.2d 561; *Kanellos v. County of Cook,* 53 Ill.2d 161.) Under the rationale of those cases we hold that under section 6(a) of article VII defendant was empowered to enact the ordinances.

We consider next the contention that the ordinances failed to conform with minimum statewide standards established by the General Assembly. Plaintiffs argue that providing "the best possible police protection" is a matter of statewide concern. Although not articulated in precisely that manner we construe plaintiffs' argument to be that because division 2.1 of article 10 of the Municipal Code is a statute encompassing a matter of statewide interest, section 6(i) of article VII of the 1970 Constitution required that any concurrent action taken by defendant be consistent with its provisions, notwithstanding that the

statute was enacted prior to the effective date of the Constitution. They analogize the statutory scheme contained in division 2.1 of article 10 of the Municipal Code with the Environmental Protection Act (Ill. Rev. Stat. 1973, ch. 111½, par. 1001 *et seq.*) and argue that "guaranteeing each Illinois citizen the best possible police protection is as vital as guaranteeing that same citizen the best possible protection against pollution."

Plaintiffs' contention that the statutory scheme either contemplated or provided for statewide uniformity is refuted by the fact that division 1 of article 10 of the Municipal Code (Civil Service in Cities, ch. 24, par. 10—1—17) permits the exemption from classified service, *inter alia,* of the chief of police and "police officers above the grade of captain." Also the qualifications for the office of civil service commissioner (ch. 24, par. 10—1—1) are not the same as those required for the office of fire and police commissioner (ch. 24, par. 10—2.1—3). Obviously the statutes did not establish a uniform plan which governed statewide the matters with which the challenged ordinances were concerned.

In further support of their position plaintiffs point out that sections 10—2.1—5, 10—2.1—6 and 10—2.1—8 of the Municipal Code have been amended since the effective date of the Constitution and that each now contains the following:

> "This Amendatory Act of 1973 does not apply to any municipality which is a home rule unit."

Plaintiffs argue that the absence of that provision from section 10—2.1—4 and 10—2.1—17 shows that the General Assembly "does not intend to provide home rule units with the power to modify those sections ***." We do not agree. A statute intended to limit or deny home rule powers must contain an express statement to that effect. *Rozner v. Korshak,* 55 Ill.2d 430.

Concerning plaintiffs' other contentions it suffices to state that *Bovinette v. City of Mascoutah,* 55 Ill.2d 129,

presented no issue of the power of a home rule unit and that the changes effected by the amendments created no question similar to that presented in *Cummings v. Daley,* 58 Ill.2d 1.

For the reasons stated the judgment is affirmed.

*Judgment affirmed.*

MR. JUSTICE CREBS took no part in the consideration or decision of this case.

MR. JUSTICE RYAN, dissenting:

The vital issue in this case is whether the Village has the power as a home rule unit, by the enactment of these ordinances, to supersede the provisions of the Illinois Municipal Code. The broad grant of home rule power is found in section 6(a) of article VII of the Constitution of 1970, which provides:

"(a) *** Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs ***."

Recently, in *Ampersand, Inc. v. Finley* (1975), 61 Ill.2d 537, 540, in interpreting the meaning of this general grant of power we stated:

"The late Professor David C. Baum, counsel to the convention's local government committee, stated that the most general and uncertain limitation upon home rule power is found in the language of the home rule grant itself. 'Section 6(a) of article VII gives a home rule unit authority to exercise only those powers and to perform only those functions pertaining to its government and affairs.' (Baum, A Tentative Survey of Illinois Home Rule (Part I): Powers and Limitations, 1972 U. Ill. L.F. 137, 152.) Continuing on page 153, Professor Baum stated: '[T]he question is not whether the "pertaining to . . ." language should limit the home rule grant, but rather how extensive the limitation should be.'

The local government committee, explaining the intended extent of this limitation, stated in its report to the constitutional convention, 'It is clear, however, that the powers of home rule units relate to their own problems, not to those of the state or the nation. \*\*\* Thus the proposed grant of powers to local governments extends only to matters "pertaining to their government and affairs".' 7 Proceedings 1621."

The report of the local government committee of the constitutional convention set out 20 examples of the powers that were and were not intended to be included within the general grant of home rule power. Three examples were given of powers that were not included in this grant by reason of extensive and long-standing State and Federal regulations. (7 Record of Proceedings, Sixth Illinois Constitutional Convention 1652.) In *Ampersand,* we found that the dominant interest which the State has in the administration of justice by virtue of article VI of the Constitution of 1970 precludes this subject from being considered a matter pertaining to the government and affairs of a local government unit. The question we must answer in this case is whether or not division 2.1 of article 10 of the Illinois Municipal Code is evidence of such a dominant and long-standing State interest as to preclude the Village of Oak Park from adopting the amendments in question under its home rule power.

The basic purpose of division 2.1 of article 10 is to afford reasonably satisfactory protection to employees in municipalities subject to this division and to provide a method by which the personnel of the fire and police departments of such municipalities can be taken out of the realm of political patronage and given tenure which depends on merit in order to encourage applications by and retention of qualified personnel. *Kennedy v. City of Joliet,* 380 Ill. 15; *People ex rel. Cadell v. Board of Fire and Police Commrs.,* 345 Ill. App. 415.

The General Assembly in 1903 first enacted the predecessor to division 2.1. (Laws of 1903, at 97.) Until 1949 municipalities between a stated minimum and maximum population were authorized to adopt its provisions. In 1949 the legislature made it mandatory that in every municipality of more than 15,000, and not more than 250,000 population, "which is not subject to 'An Act to regulate the civil service of cities,' approved March 20, 1895, as amended," a board of fire and police commissioners be appointed. (Laws of 1949, p. 453.) It also provided that cities of not less than 5,000 nor more than 15,000 could elect to come under its provisions. Several amendments have been adopted since 1949 primarily changing the minimum and maximum population figures of cities in which the Act is mandatory. It has continued to retain its correlation with the civil service statute. At the present time division 2.1 applies to all municipalities with a population of at least 5,000 and not more than 250,000 which are not subject to division 1 of article 10 of the Illinois Municipal Code (Civil Service in Cities) and to every municipality of less than 5,000 which adopts the Act.

Thus for more than 26 years the legislature has required, under either the provisions of the civil service statute or the board of fire and police commissioners statute, that municipalities within the specified population range remove the members of the fire and police departments from the realm of political patronage and provide these officers with an appointment, promotional and discharge scheme based on merit. The legislative activity in this area since 1903 and the fact that since 1949 municipalities within the population range of the Act have had no option as to its applicability demonstrate that this is an area of statewide concern and does not pertain to the government and affairs of the local municipalities. As noted above the local government committee of the Constitutional Convention in explaining home rule author-

ity indicated by its examples that long-standing State regulation of a subject would preclude a home rule unit from legislating in that field. Here not only has the regulation been of long standing, but it has also been exclusive.

We have recently upheld the authority of Cook County as a home rule unit to impose a tax on alcoholic beverages. (*Mulligan v. Dunne* (1975), 61 Ill.2d 544.) We noted in that case that although the Liquor Control Act (Ill. Rev. Stat. 1973, ch. 43, par. 94 *et seq.*) was an extensive regulation of the liquor industry by the State, it in fact recognized local interest in liquor control by allowing local government broad authority to license and control the industry and to even completely prohibit the sale of intoxicating liquors. The statute involved in the present case, by contrast, has not recognized local interest in the area of appointment, promotion and discharge of firemen and policemen and has extensively regulated the exercise of local authority on this subject.

The Village relies on our recent decision in *Peters v. City of Springfield,* 57 Ill.2d 142, which held that a home rule city has the power to alter the mandatory retirement age of policemen and firemen specified in division 1 of article 10 (Civil Service in Cities) of the Illinois Municipal Code. (Ill. Rev. Stat. 1971, ch. 24, par. 10–1–18.) In *Peters,* we observed that there was no uniform statutory retirement age of fire and policemen and pointed out the different provisions in different statutes relating to that subject. The City of Springfield was operating under division 1 of article 10 of the Illinois Municipal Code (Civil Service in Cities). Division 2.1 of article 10 of the Code (Board of Fire and Police Commissioners), which is involved in our case, authorizes the municipality to adopt an ordinance providing for a retirement age of not less than 60 years for policemen and firemen. Thus the ordinance in *Peters* did no more than to adopt the retirement age authorized under division 2.1.

In *Paglini v. Police Board of City of Chicago*, 61 Ill.2d 233, we recently held that a home rule unit has the authority to provide that a hearing officer, not a member of the police board, conduct a hearing on charges against a police officer. The city of Chicago has adopted division 1 of article 10 (Civil Service in Cities). Section 10—1—18.1 of division 1 provides for hearings before the police board or any member thereof appointed by the police board to hear the charges. From a discussion of the history of this section found in *Murphy v. Police Board*, 94 Ill. App. 2d 153, it is apparent that the State has not asserted such a dominant interest in the procedural requirements of a hearing as to prohibit the city from authorizing that the hearings be conducted before a hearing officer rather than before the police board or a member thereof. The same sentence of the statute that provides for hearings before the board or a member thereof authorizes the police board to establish rules for the conduct of hearings.

The changing of the mandatory retirement age in *Peters*, and the simple procedural change in *Paglini,* are far different from the alterations of the basic structure of the merit selection and retirement provisions relating to policemen and firemen found in the ordinance under consideration in the present case.

Although the legislature by the creation of the Board of Fire and Police Commissioners under division 2.1 of article 10 manifested the desire to create a board independent of and free from political and other influences (see *Mank v. Board of Fire and Police Commissioners*, 7 Ill. App. 3d 478), the amended Village Code destroys much of this independence. Article 16 of chapter 2 of the Village Code removes the statutory requirement that not more than two members of the board shall belong to the same political party, thereby enabling the influence of the dominant political party in the Village to be asserted in the activities of the board without a dissenting voice. The ordinance removes the statutory prohibition against board

members holding lucrative positions under a municipality and other public bodies, thus permitting the appointment, as members of the board, of employees of the municipalities. The result raises the distinct possibility that the continued employment and livelihood of the board members could well depend upon conforming their decisions as members of the board to the will of the appointing authority.

Just as devastating to the basic structure of merit appointment and tenure is the provision of section 36.8 of the Village Code which provides for the appointment, suspension and discharge of members of the department. In *Bovinette v. City of Mascoutah,* 55 Ill.2d 129, we held that although a municipality under division 2.1 of article 10 of the Illinois Municipal Code could confer upon the municipal manager the authority to appoint the chiefs of the fire and police departments, the authority to discharge a chief under division 2.1 of article 10 rests in the Board of Fire and Police Commissioners and then only for cause, upon written charges after a hearing.

Section 36.8 of the Village Code authorizes the village manager to appoint, suspend or discharge the chief of police and the three deputy chiefs of police. The ordinance contains no requirement that the removal be for cause or that these officers have a hearing before or after their removal. They thus hold their offices solely at the sufferance of the village manager. As to the appointment and removal of the other officers of the police department, the amended ordinance vests that power in the Board of Fire and Police Commissioners. It is not clear however whether this section of the ordinance has attempted to preserve the merit appointment, promotion and the tenure provisions of division 2.1 of article 10.

The contents of the amendments to the Village Code are not of serious concern. The primary issue is whether a home rule unit has the authority to alter or tamper with the basic foundation of division 2.1 of article 10. If we

acknowledge that this is an area pertaining to local government and affairs then we have recognized the raw power in any home rule unit to alter or even abolish all requirements of division 2.1 of article 10. The reform of merit selection and tenure of firemen and policemen which began in 1903 and which was achieved in 1949 will have been lost to home rule municipalities. Accompanying this may well be the resurrection of patronage appointments, promotions and discharges and the attendant evils. The long-standing activity by the State to abolish such practices and the dominant interest finally achieved by the State in 1949 precludes this matter from being considered as pertaining to local government and affairs. I would hold that the amendments to the ordinances of the Village of Oak Park are void.