JOSEPH MANDARINO, Plaintiff-Appellant, *v.* THE VILLAGE OF LOMBARD, Defendant-Appellee.

Second District   No. 80-190

Opinion filed December 17, 1980.

John F. Donahue, of Donahue & Duffy, of Oak Brook, for appellant.

Sarah A. Hansen, of Klein, Thorpe & Jenkins, and Ancel, Glink, Diamond & Murphy, both of Chicago, for appellee.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff, Joseph Mandarino, filed this action in the Circuit Court of Du Page County seeking a declaratory judgment that his employment as chief of police of the village of Lombard had been wrongfully termi-

nated and that a certain ordinance of the defendant village was contrary to section 10—2.1—4 of the Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 10—2.1—4), and for injunctive relief. The circuit court allowed defendant's motion for judgment on the pleadings and entered judgment in favor of defendant. Plaintiff appeals.

The few pertinent facts are largely undisputed. Plaintiff was hired as chief of police by the village manager of the defendant village on November 28, 1977, pursuant to section 2.40.020 of the Lombard Village Code, which provides in pertinent part that "[t]he Village Manager is authorized to appoint, suspend or discharge the Chief of Police without the consent of the Board of Trustees." On June 11, 1979, plaintiff received written notice from the village manager that his employment as chief of police was terminated; no written charges were filed against him, nor was board approval obtained prior to his termination. Plaintiff's subsequent requests for specification of charges and a public hearing were refused.

In his complaint filed on September 11, 1979, plaintiff alleged that there is a conflict between section 2.40.020 of the Lombard Village Code and section 10—2.1—4 of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 10—2.1—4), governing the hiring and firing of police chiefs; and that the village ordinance violates the due process and equal protection clauses of the Illinois Constitution (Ill. Const. 1970, art. I, §2). Following a hearing held on January 9, 1980, the trial court granted defendant's motion for judgment on the pleadings. This appeal followed.

Plaintiff first contends that section 10—2.1—4 of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 10—2.1—4) preempts section 2.40.020 of the Lombard Village Code. Section 10—2.1—4 of the Code sets forth the procedure for appointment and discharge of the chief of police in municipalities which have appointed a board of fire and police commissioners. As amended effective October 1, 1977, section 10—2.1—4 requires that the appointing authority file the reasons for removal or discharge with the corporate authorities, and further that such discharge is not effective unless confirmed by a majority vote of the corporate authorities.

Section 2.40.020 of the Lombard Village Code, as noted earlier, authorizes the village manager to hire and terminate the police chief at will, without written notice of the charges, hearing or approval of the board of trustees. As plaintiff points out, the ordinance was enacted by the defendant village pursuant to its home-rule powers on November 5, 1976, prior to the amendment of section 10—2.1—4 of the Municipal Code. Subsequent to this amendment, however, defendant renewed the ordinance in May 1979. Plaintiff therefore argues that his termination as chief of police was controlled by the amended statute, and not the village

ordinance, inasmuch as the former is clearly intended to afford the police chief an opportunity to have written charges filed against him and a review of the village manager's decision by the corporate authority.

It is defendant's position that the village ordinance supersedes the Illinois statute governing procedures for hiring and firing the chief of police. Citing *Stryker v. Village of Oak Park* (1976), 62 Ill. 2d 523, 343 N.E.2d 919, defendant argues that since the statute in question contains no restrictive language, and its subject matter has been held not to be of statewide concern, it cannot preempt the power of Lombard, a home-rule unit, to enact its own procedures for discharging its police chief. We agree.

Article VII, section 6(a), of the 1970 Constitution, confers a broad grant of powers on home-rule units:

> "(a) * * * Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt."

■■ The supreme court has consistently held that "a home rule unit's exercise of its power will supercede any conflicting pre-1970-Constitution legislation." (See, *e.g., Sommer v. Village of Glenview* (1980), 79 Ill. 2d 383, 392, 403 N.E.2d 258, 262, and cases cited therein; *County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, 513, 389 N.E.2d 553, 559; and *City of Rockford v. Gill* (1979), 75 Ill. 2d 334, 340, 388 N.E.2d 384, 387.) Moreover, it has repeatedly been held that a statute enacted subsequent to the Constitution and which purports to limit home-rule powers must, to that effect, be specific. (*City of Rockford v. Gill*, 75 Ill. 2d 334, 341, 388 N.E.2d 384, 387; *Stryker*, 62 Ill. 2d 523, 528, 343 N.E.2d 919, 923; *Mulligan v. Dunne* (1975), 61 Ill. 2d 544, 550, 338 N.E.2d 6, 11; *Rozner v. Korshak* (1973), 55 Ill. 2d 430, 435, 303 N.E.2d 389, 392; *Village of Hoffman Estates v. Union Oil Co.* (1977), 56 Ill. App. 3d 52, 56, 370 N.E.2d 1304, 1307.) The present section 10—2.1—4 nowhere denotes a specific purpose to limit home-rule powers, and we thus do not so interpret section 10—2.1—4. Accordingly, we conclude that section 10—2.1—4 has no restrictive effect on home-rule powers. See *Aurora Pizza Hut, Inc. v. Hayter* (1979), 79 Ill. App. 3d 1102, 1108-09, 398 N.E.2d 1150, 1155; *Village of Hoffman Estates v. Union Oil Co.* (1977), 56 Ill. App. 3d 52, 56, 370 N.E.2d 1304, 1307.

Our conclusion is further supported by section 6 of "An Act to revise the law in relation to the construction of statutes" (Ill. Rev. Stat. 1979, ch. 1, par. 1106), which provides:

> "No law enacted after January 12, 1977, denies or limits any power or function of a home rule unit, pursuant to paragraphs (g),

(h), (i), (j), or (k) of Section 6 of Article VII of the Illinois Constitution, unless there is specific language limiting or denying the power or function and the language specifically sets forth in what manner and to what extent it is a limitation on or denial of the power or function of a home rule unit."

As defendant points out in his brief, section 10—2.1—4 in its current form became effective on October 1, 1977, and contains "no specific language limiting or denying the power or function" of home-rule units.

Plaintiff also contends that the village ordinance cannot supersede section 10—2.1—4 because the procedure for appointment and discharge of chiefs of police is a matter of statewide concern. Although section 6(a) of article VII gives a home-rule unit authority to exercise only those powers and to perform only those functions pertaining to its government and affairs (Baum, *A Tentative Survey of Illinois Home Rule (Part I): Powers and Limitations*, 1972 U. Ill. L.F. 137), the Committee on Local Government explained the intended limitation in this manner:

" '[I]t is clear * * * that the powers of home-rule units relate to their own problems, not those of the state or the nation * * *.

❋  ❋  ❋

[Home rule powers] should not extend to such matters as divorce, real property law, trusts, contracts, etc. which are generally recognized as falling within the competence of state rather than local authorities.' " (1972 U. Ill. L.F. 137, 153.)

In *Stryker*, the court rejected the argument that the procedure for discharge of a police chief is a matter of statewide concern. 62 Ill. 2d 523, 527-28, 343 N.E.2d 919, 922.

For these reasons, we hold that section 10—2.1—4 is not a limitation on the home rule village's power to adopt different procedures for discharging its police chief.

Plaintiff next contends that his removal as police chief by the village manager was a denial of equal protection of the laws. Plaintiff points out that there are various procedures for the discharge of a police chief in Illinois, depending both upon the type of municipality and whether it comes under the Civil Service Act. The essence of plaintiff's argument, therefore, is that he is being treated differently from other police chiefs in Illinois insofar as his substantive rights to written notice of the charges and hearing and review of the decision by corporate authorities are concerned. Citing *Kropel v. Conlisk* (1975), 60 Ill. 2d 17, 322 N.E.2d 793, and *Palcek v. City of Chicago Heights* (1979), 74 Ill. App. 3d 702, 393 N.E.2d 1218, plaintiff maintains that the various statutory provisions must be read *in pari materia* to obviate equal protection problems. We disagree.

The supreme court in *Kropel* ruled that the various statutory provisions in the Municipal Code relating to the removal and suspension of

persons in classified civil service positions were provisions *in pari materia*; specifically, the provisions in question were sections 10—1—18.1 and 10—2.1—17. In *Kropel* a Chicago police officer was summarily suspended for 30 days. The court recognized that the controlling statute, section 10—1—18.1 of the Code, if construed literally, failed to ensure due process since it did not provide for a hearing if the suspension was for 30 days or less. It therefore examined other rules and sections of the Code, including sections 10—1—18 and 10—2.1—17. The court concluded that it was clear from these statutes and rules that the public policy of this State, regardless of any constitutional considerations, is that a disciplinary suspension of more than one week of scheduled working days cannot be levied without providing some means of review. The court held, therefore, that the cited statute and rules should be considered *in pari materia*.

In *Palcek*, purportedly decided on the basis of *Kropel*, the court employed an equal protection analysis. There, a police officer's discharge was reversed because he had not been warned that a statement he gave to a fellow police officer would be used against him at his discharge hearing. The court noted that the legislature had specifically provided civil service employees, including police officers in division I municipalities, with safeguards which included, among others, that before such employees may be interrogated they must be advised in writing that their admissions may be used as the basis for charges seeking their removal or discharge, and that they have the right to counsel. After further noting that there is no similar provision in the statute governing removal or discharge in division II municipalities, the court found no reasonable basis for a different legislative classification. It concluded that although no issue of due process was involved, the division I safeguards must be read into the provisions applicable to division II municipalities to avoid a denial of equal protection.

In *Lupo v. Board of Fire & Police Commissioners* (1979), 82 Ill. App. 3d 449, 402 N.E.2d 624, this court declined to adopt the equal protection analysis employed in *Palcek*. The rationale utilized by the court is persuasive here:

> "The equal protection analysis employed in *Kropel* is very different from that to be followed in the situation faced in *Palcek* and the case at bar. In *Kropel*, an independent constitutional right, due process, of a particular class was violated. The equal protection language was essentially cumulative or an alternate ground for decision. *Kropel* does not stand for the proposition that everything in section 10—2.1—17 must be read into section 10—1—18 and 10—1—18.1, and vice versa." 82 Ill. App. 3d 449, 455, 402 N.E.2d 624, 628-29.

In *Kropel* and *Palcek*, the doctrine of *in pari materia* was utilized so

as to reconcile certain provisions within the Municipal Code. By contrast, the present case involves conflicting provisions between two separate sources of law, the Lombard Village Code and the Municipal Code. Certainly these cases do not stand for the proposition that everything in section 10—2.1—4 of the Municipal Code must be read into section 2.40.020 of the Village Code. We therefore conclude that the doctrine of *in pari materia* is inapplicable in the instant case.

■■ Plaintiff raises the issue of his "liberty" interest in his reputation. Specifically he claims entitlement to notice and a public hearing so that he may clear himself of any stigma attached to his termination. We refuse to entertain this argument for the reasons that it is made for the first time on appeal (*Skyrise Apartments v. City of Rockford* (1980), 83 Ill. App. 3d 447, 449, 403 N.E.2d 1334, 1336-37), and is based on alleged facts which are *dehors* the record. *Perez v. Janota* (1969), 107 Ill. App. 2d 90, 92, 246 N.E.2d 42, 43; *Iczek v. Iczek* (1963), 42 Ill. App. 2d 241, 249, 191 N.E.2d 648, 652.

The judgment of the Circuit Court of Du Page County is affirmed.

Affirmed.

SEIDENFELD, P. J., and VAN DEUSEN, J., concur.