(No. 64906.—

JOHN M. DINEEN *et al.*, Appellants, v. THE CITY OF CHICAGO *et al.*, Appellees.

*Opinion filed November 21, 1988.*

250

STAMOS, J., took no part.

Marvin Gittler, Joel A. D'Alba, Lester Asher and Reed Lee, of Chicago (Asher, Pavalon, Gittler & Greenfield, Ltd., of counsel), for appellants.

Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Sharon Baldwin, of counsel), for appellees.

JUSTICE MILLER delivered the opinion of the court:

This is an action for declaratory and injunctive relief challenging a requirement of the Chicago police department that officers take unpaid leaves of absence upon becoming candidates for public office. In their complaint, the plaintiffs contended that a recently enacted State statute preempted and invalidated the police department's leave-of-absence rule. The circuit court of Cook County agreed with the plaintiffs, striking down the rule and enjoining its enforcement. The appellate court reversed, holding that the State law had no effect on the department's rule. (152 Ill. App. 3d 90.) We allowed the plaintiffs' petition for leave to appeal (107 Ill. 2d R. 315(a)), and we now affirm the judgment of the appellate court.

The present action was brought by Lodge 7 of the Fraternal Order of Police, Lodge 7 president John M. Dineen, and police officers George Gottlieb and George J. Preski; Lodge 7 serves as the exclusive bargaining representative for those Chicago police officers who serve in positions below the rank of sergeant. In existence at the time the action was brought was a collective-bargaining agreement between Lodge 7 and the City, and the city council had adopted the agreement as an or-

dinance. Section 10.3 of the agreement provided, in part, "Any officer who runs for political office shall take a leave of absence upon the filing of the petition for office pursuant to the Employer's regular leave of absence policy"; leaves of absence are without pay. It came to the attention of the police department that Officers Gottlieb and Preski were candidates for public office, and each of them received a letter dated January 13, 1986, from the deputy superintendent of police regarding the department's leave-of-absence requirement for political candidates. The deputy superintendent advised Officers Gottlieb and Preski to apply for a leave of absence by January 22, 1986, in accordance with the department's rule or face disciplinary action.

Rather than comply with the leave-of-absence rule, the plaintiffs filed the instant complaint for declaratory and injunctive relief on January 22, 1986. Named as defendants in the action were the City of Chicago, its mayor, and the superintendent and deputy superintendent of the police department. In their complaint the plaintiffs contended that the police department's leave-of-absence requirement for police officers running for political office could not stand in light of a recently enacted State statute. The plaintiffs believed that the new law superseded and invalidated such restrictions imposed by home rule units of local government, like the City of Chicago, on the political activities of their employees, and the plaintiffs asked that the police department's rule be declared invalid and that the defendants be enjoined from enforcing it. The plaintiffs prosecuted the action on their own behalf and as representatives of their bargaining unit. At an early stage in the proceedings Officer Preski, having ended his political candidacy, withdrew as a plaintiff.

The new law relied on by the plaintiffs was Public Act 84—1018, which took effect on October 30, 1985,

when the General Assembly voted to override the Governor's veto of the legislation. Public Act 84—1018 amended article 10, divisions 1 and 2.1, of the Illinois Municipal Code (see Ill. Rev. Stat. 1985, ch. 24, pars. 10—1—1 through 10—1—48; ch. 24, pars. 10—2.1—1 through 10—2.1—30) and "An Act in relation to fire protection districts" (see Ill. Rev. Stat. 1985, ch. 127½, pars. 21 through 38.6) (the Fire Protection District Act) by adding to them provisions prohibiting public bodies covered under those statutes from restricting the political activities of their employees. Public Act 84—1018 also contained a separate provision preempting inconsistent activity by home rule units of local government. The preemption provision denied to home rule units the power to act inconsistently with the act and declared that "all existing laws and ordinances which are inconsistent with this Act are hereby superseded."

It was the plaintiffs' theory in the circuit court that the preemptive force of Public Act 84—1018 was not limited to municipalities covered under article 10, divisions 1 or 2.1, of the Illinois Municipal Code and to fire protection districts. Rather, the plaintiffs believed that the preemption provision applied to all home rule units in the State and invalidated all restrictions imposed by the home rule units on the political activities of their employees. The trial judge initially granted the plaintiffs' request for a temporary restraining order barring the defendants from enforcing the police department's leave-of-absence requirement. Later, following a hearing, the trial judge accepted the plaintiffs' interpretation of the intended scope of the act. Concluding that the preemption provision in the act operated to supersede and invalidate the leave-of-absence requirement, the trial judge declared the rule invalid and enjoined its enforcement.

The defendants appealed the circuit court's decision. The appellate court reversed, ruling that Public Act 84—

1018 did not apply to the City of Chicago and therefore had no effect on the police department's leave-of-absence requirement for police officers running for political office. Under the appellate court's construction, the preemption provision of Public Act 84—1018 affected only municipalities covered under division 1 or division 2.1 of article 10 of the Illinois Municipal Code and fire protection districts. The appellate court found that the City did not operate under any of those provisions—a conclusion that the plaintiffs did not at that time dispute—and the court accordingly held that Public Act 84—1018 did not invalidate the department's leave-of-absence requirement.

Public Act 84—1018 consisted of four sections. Section 1 of the public act text added sections 10—1—27.1 and 10—2.1—5.1 to article 10, divisions 1 and 2.1, respectively, of the Illinois Municipal Code. (Ill. Rev. Stat. 1985, ch. 24, pars. 10—1—27.1, 10—2.1—5.1.) Division 1 supplies a civil service system for those municipalities that choose to adopt its provisions (see Ill. Rev. Stat. 1985, ch. 24, par. 10—1—43); division 2.1 establishes a board of fire and police commissioners for those municipalities that choose to adopt the division or that are required to operate under it (see Ill. Rev. Stat. 1985, ch. 24, par. 10—2.1—1; see also *Bovinette v. City of Mascoutah* (1973), 55 Ill. 2d 129, 131). Section 2 of the public act text added section 37.16a to the Fire Protection District Act (Ill. Rev. Stat. 1985, ch. 127, par. 37.16a). The Fire Protection District Act permits the creation of fire protection districts in this State and applies to districts organized under its provisions.

The new provisions added by Public Act 84—1018 to the Municipal Code and the Fire Protection District Act are identical in all material respects. Section 10—1—27.1 of the Municipal Code provides:

"No municipality covered under this Division 1 may make or enforce any rule or ordinance which will in any way inhibit or prohibit any employee from exercising his full political rights to engage in political activities, including the right to petition, make speeches, campaign door to door, and to run for public office, so long as the employee does not use his official position to coerce or influence others and does not engage in these activities while he is at work on duty." (Ill. Rev. Stat. 1985, ch. 24, par. 10—1—27.1.)

Section 10—2.1—5.1 of the Illinois Municipal Code and section 37.16a of the Fire Protection District Act differ from the provision quoted above only with respect to the introductory language used in each to indicate its application. See Ill. Rev. Stat. 1985, ch. 24, par. 10—2.1—5.1 ("No municipality covered under this Division 2.1 may make or enforce ***"); Ill. Rev. Stat. 1985, ch. 127, par. 37.16a ("No fire protection district may make or enforce ***").

Public Act 84—1018 also contained a provision preempting inconsistent activity by home rule units of local government. Section 3 of the public act text, which the legislature did not codify, states:

"Pursuant to paragraphs (h) and (i) of Section 6 of Article VII of the Illinois Constitution, this Act specifically denies and limits the exercise by a home rule unit of any power which is inconsistent with this Act, and all existing laws and ordinances which are inconsistent with this Act are hereby superseded. This Act does not preempt the concurrent exercise by home rule units of powers consistent with this Act."

The fourth and final section of the public act text provided the effective date of the legislation.

The plaintiffs renew here their argument that the preemption provision contained in section 3 of the public act text precludes all home rule units from restricting the political activities of their employees. This argument

is refuted by the plain language of the act, and it must fail.

The preemption provision bars home rule units from exercising any power in a manner "inconsistent with this Act" and supersedes all local laws and ordinances that are "inconsistent with this Act." A determination of what is "inconsistent with this Act" requires reference to the other parts of the public act text. As we have stated, sections 1 and 2 of the act amend the Illinois Municipal Code and the Fire Protection District Act by adding to those statutes provisions that forbid division 1 and division 2.1 municipalities and fire protection districts to restrict the political activities of their employees. In ascertaining the scope of the preemption provision, we may ignore section 2 of the public act text. The only units of local government that may exercise home rule powers are counties and municipalities (Ill. Const. 1970, art. VII, §6(a)); the term "municipality" comprises cities, villages, and incorporated towns (Ill. Const. 1970, art. VII, §1). Because a fire protection district is neither a county nor a municipality, as that term is used here, it cannot have home rule powers, and therefore the preemption provision of section 3 can have no application to the fire protection districts.

Thus, a local ordinance would be inconsistent with the act only if the home rule unit adopting the ordinance were covered under one of the statutes amended by the act—that is, only if the home rule unit were a division 1 or division 2.1 municipality. As the appellate court correctly reasoned, an ordinance adopted by a home rule unit other than a division 1 or division 2.1 municipality would not be prohibited by the act and therefore would not be inconsistent with it. (152 Ill. App. 3d at 94.) The plaintiffs' interpretation of the preemption provision enlarges considerably the scope of the act, beyond the intent expressed by the legislature, and therefore we de-

cline to read into the preemption provision the general, wide-ranging prohibition suggested by the plaintiffs.

Thus, the legislature did not need to include within the preemption provision additional language confining its operation to home rule units that are "covered under" the statutes amended by the act, as the plaintiffs suggest the legislature would have done had it intended to limit the scope of the preemption provision in that manner. By its own terms, section 3 of the public act text preempts only local ordinances inconsistent with the act, and, as we have seen, the act purports to prohibit only home rule units covered under division 1 or division 2.1 from restricting the political activities of their employees. The legislature clearly stated the intended scope of the preemption provision, and a catalogue of the entities whose home rule powers were being limited by the act would have been redundant.

Contrary to the plaintiffs' argument, we do not believe that our interpretation renders the preemption provision superfluous. Sections 10—1—27.1 and 10—2.1—5.1 of the Illinois Municipal Code cannot by themselves prevent home rule units covered under division 1 or division 2.1 from restricting the political activities of their employees, for this court has previously recognized the authority of home rule units to establish requirements different from those prescribed in division 1 (see *Peters v. City of Springfield* (1974), 57 Ill. 2d 142) and division 2.1 (see *Stryker v. Village of Oak Park* (1976), 62 Ill. 2d 523). Here, the legislature chose to deny to home rule units covered under division 1 or 2.1 the power to act inconsistently with the new rules expressed in sections 10—1—27.1 and 10—2.1—5.1. To that end, the legislature declared its preemptive intent and invoked article VII, sections 6(h) and (i), of the Illinois Constitution (Ill. Const. 1970, art. VII, §§6(h), (i)). Section 6(h) of article VII empowers the legislature to "provide specifically by

law for the exclusive exercise by the State of any power or function of a home rule unit," with several exceptions not relevant here. Section 6(i) of article VII provides that "[h]ome rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive."

In this regard, it may be noted that if the legislature had intended in Public Act 84—1018 to preempt all local restrictions on the political activities of employees of home rule units, a reference to section 6(g) of article VII, rather than section 6(h), would have been necessary. Section 6(g) provides, "The General Assembly by a law approved by the vote of three-fifths of the members elected to each house may deny or limit the power to tax and any other power or function of a home rule unit not exercised or performed by the State," with exceptions not relevant here. (Ill. Const. 1970, art. VII, §6(g).) Because the legislature has not attempted to formulate a civil service system applicable to all home rule units, preemption of home rule activity in this sphere would have required legislative action under section 6(g) rather than section 6(h). That the legislature happened to pass Public Act 84—1018 by the extraordinary majorities required for preemption under section 6(g) does not, contrary to the plaintiffs' argument, indicate to us that a broader preemptive scope was intended. The bill may have attracted such widespread support in the legislature precisely because its effect was confined to that apparent from its language.

Finally, the placement of the preemption provision in a separate section of the public act text does not suggest that the legislature intended for the provision to apply generally to all home rule units. As we have noted, sec-

tion 1 of the public act text added sections 10—1—27.1 and 10—2.1—5.1 to the Illinois Municipal Code. Rather than repeat the preemption language in each of those provisions, the legislature chose instead to place the language in a separate part of the act. Unlike the plaintiffs, we decline to infer from that circumstance an intent different from the one clearly expressed in the language used by the legislature.

Our result here is required by the plain and unambiguous language of the act, and therefore we have no need to consult the legislative debates of the bill for guidance. (See *People v. Madison* (1988), 121 Ill. 2d 195, 203; *Chicago National League Ball Club, Inc. v. Thompson* (1985), 108 Ill. 2d 357, 366.) We find no contradiction, however, in any part of the legislative history offered by the plaintiffs in support of their position here.

For example, the plaintiffs refer to a statement made in the House of Representatives by one sponsor regarding the purpose of the bill that eventually became Public Act 84—1018:

> "House Bill 1539 grants political rights to local policemen, local firefighters, members of fire protection districts and civil service employees. It's essentially what we did yesterday with House Bill 761 with state police officers. It simply grants these people the same political rights that anybody else has and doesn't designate them to the classification of second class political citizens." (84th Ill. Gen. Assem., House Proceedings, May 23, 1985, at 49 (statement of Representative Curran).)

That summary of the legislation does not indicate to us that the representative believed that the purpose of the bill was broader than what its plain language expresses.

In this court the plaintiffs make the additional argument, for the first time in these proceedings, that the City of Chicago is in fact a municipality covered under article 10, division 1, of the Illinois Municipal Code. The

City adopted, at one time, article 10, division 1, of the Code, but the city council later replaced the bulk of those provisions with a personnel code of its own. (See *Resman v. Personnel Board* (1981), 96 Ill. App. 3d 919, 922.) In its personnel ordinance the city council expressly retained two provisions found in article 10, division 1, however, and it is the plaintiffs' theory that the city council's retention of the two Illinois Municipal Code provisions signifies that the City continues to operate under the State statute. The plaintiffs conclude that the City now is barred, by section 10—1—27.1 and the preemption provision, from enforcing the police department's leave-of-absence requirement for officers who are political candidates. The plaintiffs did not raise this argument in either the circuit court, where they won, or the appellate court, where they lost. In this court, the argument appears in the plaintiffs' initial brief and reply brief, but not in their petition for leave to appeal.

Effective January 1, 1976, the city council enacted a personnel ordinance, replacing the personnel scheme provided by article 10, division 1, of the Illinois Municipal Code. Section 25.1—1 of the Chicago Municipal Code provided:

> "It is the general purpose of this ordinance, and it is necessary in the public interest, to establish a system of personnel administration that meets the social, economic, and program needs of the people of the City of Chicago, to provide for a professional and progressive merit system for employment and to insure flexible career service within the City of Chicago by substituting a public employment system superseding the Civil Service System now operating within the City of Chicago pursuant to the law of the State of Illinois." (Chicago Municipal Code §25.1—1 (1976).)

In 1981 the city council repealed the 1976 personnel ordinance and replaced it with a new one; the introductory

paragraph of the new personnel ordinance contained the same statement of purpose found in the earlier ordinance, though the 1981 version deleted the then-unnecessary reference to "the Civil Service System now operating pursuant to the law of the State of Illinois." Like the 1976 personnel ordinance, the 1981 ordinance applied to all employees in the city service, including police officers, except officers above the rank of captain. Chicago Municipal Code §25.1—3 (1981).

As the basis for the argument that the City of Chicago is a municipality "covered under" article 10, division 1, of the Illinois Municipal Code and therefore subject to section 10—1—27.1, the plaintiffs rely on a provision found in the City's personnel ordinance. Section 25.1—13 of the Chicago Municipal Code provides:

> "This ordinance shall not apply nor have any effect upon the Police Board, its manner of selection, composition, or its powers and duties as set forth in Section 11—2 and Section 11—3 of this Code and Section 3—7—3.1, *Section 10—1—18.1, and Section 10—1—45 of the Illinois Municipal Code.* Nor shall this ordinance have any effect upon the selection, powers or duties of the Superintendent of Police as set forth in the Municipal Code of the City of Chicago and Section 3—7—3.2 of the Illinois Municipal Code." (Emphasis added.) (Chicago Municipal Code §25.1—13 (1981).)

An identical provision appeared in the City's 1976 personnel ordinance. Under the City's personnel ordinance, the police board therefore remains subject to sections 10—1—18.1 and 10—1—45 of the Illinois Municipal Code. Section 10—1—18.1 prescribes certain requirements for the removal, discharge, and suspension of police officers; section 10—1—45 allows for review of personnel decisions under the Administrative Review Law (Ill. Rev. Stat. 1985, ch. 110, pars. 3—101 through 3—112). The plaintiffs argue that the city council's retention of sec-

tions 10—1—18.1 and 10—1—45 should be construed to mean that the City is "covered under" that statute for purposes of applying the preemption provision now applicable to article 10, division 1.

The defendants argue in response that the plaintiffs have waived this argument because they failed to present it earlier. Addressing the merits of the plaintiffs' contention, the defendants maintain that the City should not be deemed to be "covered under" article 10, division 1, of the Illinois Municipal Code. The defendants note that the City's own personnel ordinance duplicates the requirements of section 10—1—18.1 pertaining to the removal, discharge, and suspension of police officers, and that retention of section 10—1—45 was necessary so that the board's decisions would remain reviewable under the Administrative Review Law, a matter that the City could not by itself provide for (see *Paper Supply Co. v. City of Chicago* (1974), 57 Ill. 2d 553, 579-80). The defendants conclude that the City does not operate under article 10, division 1, of the Illinois Municipal Code and that the City therefore should not be deemed to be "covered under" those provisions for purposes of applying section 10—1—27.1 and the preemption provision of the amendatory act. The defendants do not dispute that the leave-of-absence requirement would be invalidated by operation of the preemption provision and section 10—1—27.1, if they are held to be applicable here.

As we have indicated, the plaintiffs did not raise this argument in the courts below. Moreover, they did not raise the argument in their petition for leave to appeal, waiting until their initial brief to assert the question. "However, this court, relying on our Rule 366(a)(5) (87 Ill. 2d R. 366(a)(5)), has considered arguments not presented in the trial court when the arguments are based on the interpretation of a statute, the necessary facts are before us, the parties have briefed and argued the

point, and the point is of public interest. (*Cronin v. Lindberg* (1976), 66 Ill. 2d 47, 61.)" (*In re Estate of Swiecicki* (1985), 106 Ill. 2d 111, 122-23.) In *Swiecicki* the court considered and rejected a question of statutory interpretation even though the appellant in that case had "failed to present this argument either in the circuit court or the appellate court." (106 Ill. 2d at 122.) In *Cronin* the court considered an issue of statutory interpretation that was the gravamen of one of two consolidated actions and thus was presented to the trial judge but was not decided by him because it was rendered moot by his ruling that the statute in question was unconstitutional. Citing *Swiecicki* and *Cronin*, the plaintiffs in this case urge us to consider their own belated argument, contending that the question is a purely legal one of statutory interpretation that has been briefed and argued by the parties and is of great public interest.

The plaintiffs have been doubly late in presenting this issue. Not only did they fail to present the argument in the proceedings in either court below, but they did not raise the issue in their petition for leave to appeal filed with this court. Although it is not necessary that the plaintiffs have raised the precise argument in the appellate court, it is necessary that the issue be one that is fairly presented by the record. In *Mueller v. Elm Park Hotel Co.* (1945), 391 Ill. 391, the court explained:

> "The rule is that on review of an Appellate Court judgment in this court, on the appeal of the party who was appellant in that court, questions which were not raised and argued by him in the Appellate Court cannot be raised or argued for the first time in this court. This rule is based on the fact that the party who was the appellant in the Appellate Court made the issues in that court by his assignments of error and his arguments in that court, and he cannot raise new questions in this court. This rule, however, does not apply to the party who was appellee in the Appellate Court, because he had nothing to do

with making the issues in that court. He is only required to defend against the questions raised and the issues presented by the appellant in that court. Where the trial court is reversed by the Appellate Court and the appellee in that court brings the case here for further review, he may raise any questions properly presented by the record to sustain the judgment of the trial court, even though those questions were not raised or argued in the Appellate Court. He may sustain the judgment of the trial court upon any ground justified by the record, regardless of the fact that such questions were not presented to and passed upon by the Appellate Court." 391 Ill. at 398-99.

Under the rule described in *Mueller*, the plaintiffs, who were the appellees in the appellate court and who are the appellants in this court, would be entitled to raise here, in support of the circuit court's favorable judgment and against the appellate court's adverse judgment, any arguments properly presented by the record even though the points were not raised or argued in the appellate court. (But see *Kramer v. Exchange National Bank* (1987), 118 Ill. 2d 277, 286 (refusing to consider point raised for first time in supreme court by plaintiffs, who prevailed in circuit court but who lost in appellate court).) We question whether under *Mueller* the new argument is one that may be deemed to be properly presented by the record in this case. Although the issue is a purely legal one, involving only a question of statutory construction, we do not believe that the plaintiffs should now be allowed, at this late date, to change the theory on which their action is based. Their new argument introduces a different theory of the case, one that is sharply at odds with their original theory. The plaintiffs initially contended that the preemption provision contained in the amendatory act was an independent, free-standing provision applicable to all home rule units, including those, such as the City of Chicago, that did not operate under article 10, division 1, of the Illinois Munic-

ipal Code. The new ground now asserted by the plaintiffs in support of the circuit court's favorable ruling enlarges considerably the scope of the inquiry, calling into question the relationship between the Illinois Municipal Code and the City's own personnel ordinance.

As we have indicated, the plaintiffs failed to present the new argument in their petition for leave to appeal to this court. Our Rule 315(b), which is applicable to both civil and criminal appeals (see 107 Ill. 2d R. 612(b)), requires that the petition for leave to appeal set out "(3) a statement of the points relied upon for reversal of the judgment of the Appellate Court; *** and (5) a short argument (including appropriate authorities) stating why review by the Supreme Court is warranted and why the decision of the Appellate Court should be reversed or modified." (107 Ill. 2d Rules 315(b)(3), (b)(5).) We have previously held that we need not consider an argument that a party raises in a later brief but fails to raise in its petition for leave to appeal. (See, *e.g.*, *People v. Ward* (1986), 113 Ill. 2d 516, 522-23; *People v. Anderson* (1986), 112 Ill. 2d 39, 43-44.) In this case, then, the plaintiffs' failure to specifically raise in their petition for leave to appeal the issue of the effect of the City's retention of the Illinois Municipal Code provisions may be considered a waiver of the argument for purposes of the proceedings in this court.

To be sure, the waiver rule is not a jurisdictional requirement, but a principle of administrative convenience. This is made clear by Rule 366(a)(5), which provides that a reviewing court has the authority to "enter any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief *** that the case may require." (107 Ill. 2d R. 366(a)(5); see *Hux v. Raben* (1967), 38 Ill. 2d 223, 224 (discussing relationship between Rule 366(a)(5) and Rule 341(e)(7), pertaining to contents of briefs on ap-

peal).) Thus, a party's failure to assert the argument in the petition for leave to appeal does not preclude consideration of the question on review, and this court has previously considered matters that an appellant omitted from its petition for leave to appeal. (*E.g.*, *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 462; *Schatz v. Abbott Laboratories, Inc.* (1972), 51 Ill. 2d 143, 144-45.) In both *Genaust* and *Schatz* the additional issues that the appellants raised on review in this court concerned portions of their causes of action that had been presented to and adjudicated by the lower courts. The situation here is far different. In this case, the plaintiffs' new argument poses an alternative theory of the case, one that was not discernible from an examination of the proceedings in the courts below. Thus, in allowing the plaintiffs' petition for leave to appeal, we had no inkling of their new theory of the case, which they then asserted, following the allowance of their appeal, in support of the judgment of the circuit court. Clearly, we have the authority to consider the plaintiffs' new argument. But the resolution of the question is by no means clear, and we decline to consider here an argument that was not presented in the proceedings below and is raised here as an afterthought. We note, however, that our decision in this appeal is made without prejudice to the rights of persons who are not parties to the present action to raise the same argument in a future case, or to the rights of the present plaintiffs to raise the argument in a future case arising from a different cause of action. See *Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 251-52.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICE STAMOS took no part in the consideration or decision of this case.