MARK KOTTE *et al.*, Plaintiffs-Appellants, v. NORMAL BOARD OF FIRE AND POLICE COMMISSIONERS, Defendant-Appellee.

Fourth District   No. 4—93—0803

Argued February 16, 1994.—Opinion filed January 26, 1995.

Marcia F. Straub (argued), of Peoria, for appellants.

Wayne Karplus, Corporation Counsel (argued), of Normal, for appellee.

JUSTICE COOK delivered the opinion of the court:

In November 1992, plaintiffs, Mark Kotte, a sergeant with the Normal police department, and the Town of Normal Police Benevolent and Protective Association Unit No. 22 (PBPA), the collective-bargaining agent for all Normal police officers below the rank of lieutenant, brought this declaratory judgment action, alleging the rules and regulations of the Normal Board of Fire and Police Commissioners (Board) regarding temporary appointments and promotions violated division 2.1 of article 10 of the Illinois Municipal Code (Code) (Ill. Rev. Stat. 1991, ch. 24, pars. 10—2.1—1 through 10—2.1—30). Division 2.1 of article 10 of the Code governs the operation of boards of fire and police commissioners for municipalities without civil service. Plaintiffs sought a declaration that the rules, which were enacted pursuant to a Normal ordinance, were invalid and the vacatur of any temporary appointments made under the rules. On cross-motions for summary judgment, the circuit court granted summary judgment for defendant and denied summary judgment for plaintiffs on March 22, 1993. Plaintiffs appeal. We affirm.

■ Section 10—2.1—16 of the Code states the board of fire and police commissioners has sole authority to make temporary appointments to prevent the stoppage of public business, meet extraordinary exigencies, or prevent material impairment of the police department. Those appointments are never to exceed 60 days. (Ill. Rev. Stat. 1991, ch. 24, par. 10—2.1—16.) Section 10—2.1—4 of the Code further provides "[a]ll appointments *** other than that of the lowest rank *** shall be from the rank next below that to which the appointment is made except as otherwise provided in this Section." Ill. Rev. Stat. 1991, ch. 24, par. 10—2.1—4.

The Town of Normal (Normal), having a population greater than 25,000, is a home rule unit under article VII, section 6, of the Illinois Constitution. (Ill. Const. 1970, art. VII, § 6.) Pursuant to its powers to regulate for the protection of the public health, safety, morals, and welfare (see Ill. Const. 1970, art. VII, § 6(a)), Normal passed an ordinance that allowed the Board to enact rules modifying the Code's provisions. Specifically, the ordinance provided:

"[T]he Board may promulgate rules authorizing the Chief of the department in which any temporary vacancy exists to name a person to the rank in which the temporary vacancy exists to fill that vacancy. The Board by rule may provide for temporary appointments exceeding sixty (60) days *** twice in any calendar year. *It is the intent of this Section to modify Section 10—2.1—16 of the Illinois Municipal Code.*" (Emphasis added.) Town of Normal, Ill., Ordinance 3371, ch. 10, div. 9, § 10.9—4 (February 4, 1985).

Pursuant to this ordinance, the Board enacted the following rules and regulations:

"[T]he Chief of the Department in which any temporary vacancy exists is hereby authorized to name a person to the rank in which the temporary vacancy exists to fill that vacancy as follows:

A. The Chief of the Police is authorized to appoint any person to the rank in which any temporary vacancy exists. Such person shall serve *** at the discretion of the Chief of Police." (Town of Normal, Ill., Rule 5.1, § 1(A) (1992).)

The rules also allowed temporary appointments to exceed 60 days in length, provided the Board must confirm all temporary appointments expected to exceed 60 days. Town of Normal, Ill., Rule 5.1, § 2 (1992).

Pursuant to this authority, Normal police chief James Taylor temporarily appointed Frank Zayas, who held the rank of patrolman, to the rank of sergeant in July 1991. Taylor stated by affidavit that the police department chain of command included one chief, two captains, four lieutenants, and seven sergeants. The PBPA protested because there were no vacancies in the rank of sergeant when Zayas was appointed.

On December 1, 1991, Taylor temporarily appointed Zayas to the rank of lieutenant to fill an existing vacancy. On January 22, 1992, Taylor requested and on March 11, 1992, received approval from the Board of Zayas' temporary appointment for a period exceeding 60 days. Taylor stated in his December 1992 affidavit that at the time of Zayas' appointment, there were two lieutenant vacancies and one sergeant vacancy due to several retirements within the command staff. He stated Zayas' temporary appointment was necessary in his judgment to preclude a possible stoppage of public business or material impairment in the orderly and effective operation of the police force due to the vacancies. In December 1991, the PBPA objected to the Board, and this declaratory judgment action followed.

Summary judgment is properly granted when the pleadings, depositions, and affidavits show the lack of a genuine issue of material fact, and the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c).) The fact that both parties have filed motions for summary judgment does not necessarily mean there is no genuine issue of material fact. *Beverly Bank v. Alsip Bank* (1982), 106 Ill. App. 3d 1012, 436 N.E.2d 598.

After this appeal was filed, the parties executed a collective-bargaining agreement which resolved some of the issues raised in the appeal. That agreement requires that promotions be made from the next lowest rank, and provides specific rules and regulations for the sergeants' promotional process. The parties agree that issues II

(power to appoint other than from next lowest rank) and III (vagueness of rules) are now moot. Plaintiffs state that issue I (power to allow chief to appoint) is still live, as plaintiffs argue that lieutenants are not covered by the collective-bargaining agreement, and the statutes must be followed to that extent.

■ Plaintiffs argue that by taking the power to temporarily appoint officers to lieutenant away from the Board, Normal impermissibly changed its form of government. They also argue the ordinance exceeds the constitutional limitation of a home rule unit to only regulate with respect to "its government and affairs." Ill. Const. 1970, art. VII, § 6(a).

A home rule unit cannot change its form of government without a referendum. (Ill. Const. 1970, art. VII, § 6(f).) Since there was no referendum, plaintiffs argue the ordinance and rules are invalid. When the constitution states that a change in the "form of government" is allowed only through the use of a referendum, the constitution is not referring to changes such as those here in the operation of the Board. Instead, the language refers to the election of municipal governing bodies and the relationship between the legislative and executive branches of government. (*Peters v. City of Springfield* (1974), 57 Ill. 2d 142, 149, 311 N.E.2d 107, 111.) In *Peters*, the court held a municipality's civil service system was not its form of government, and changes to that system did not require a referendum. (*Peters*, 57 Ill. 2d at 149, 311 N.E.2d at 111.) In this case, Normal did not move any legislative authority to the executive branch, nor did it move any authority that was originally in the executive branch to the legislative branch. In the present case, Normal's Board is no more its form of government than the civil service system was Springfield's form of government in *Peters*. A change in the operation of the Board does not require a referendum.

■ It is clear that when a home rule unit enacts an ordinance that conflicts with a statute effective prior to the effective date of the 1970 Illinois Constitution, the ordinance is valid and supersedes the statute. As the supreme court noted in *Mulligan v. Dunne* (1975), 61 Ill. 2d 544, 550, 338 N.E.2d 6, 10-11:

> "We have held on several occasions that even an exercise of a home-rule power under section 6(a) which actually conflicts with a statute enacted prior to the adoption of the 1970 Constitution is nonetheless valid unless the power is restricted by a constitutional provision or appropriate legislation enacted subsequent to the 1970 Constitution."

In order for subsequent legislation to affect the power of a home rule unit, the legislation must "contain an express statement to that ef-

fect." (*City of Evanston v. Create, Inc.* (1981), 85 Ill. 2d 101, 108, 421 N.E.2d 196, 199; *Rozner v. Korshak* (1973), 55 Ill. 2d 430, 435, 303 N.E.2d 389, 392.) Division 2.1 of article 10 of the Code was enacted prior to 1970 and has not been amended to restrict a home rule unit's power; therefore, Normal was empowered by the constitution to enact ordinances in conflict with division 2.1 of article 10 of the Code.

In *Stryker v. Village of Oak Park* (1976), 62 Ill. 2d 523, 343 N.E.2d 919, the supreme court allowed a home rule unit to alter operation of its board of fire and police commissioners. The court affirmed a finding that Oak Park's ordinance allowing the village manager to terminate the chief of police and the deputy chief was valid, even though it conflicted with sections 10—2.1—4 and 10—2.1—17 of the Code (see Ill. Rev. Stat. 1973, ch. 24, pars. 10—2.1—4, 10—2.1—17). The court found the home rule unit was empowered by the constitution to enact ordinances conflicting with the Code. *Stryker*, 62 Ill. 2d at 527, 343 N.E.2d at 922.

Several appellate courts have also recognized a home rule municipality's authority to enact ordinances varying the operation of boards of fire and police commissioners, even when they directly conflict with division 2.1 of article 10 of the Code. See *Kadzielawski v. Board of Fire & Police Commissioners* (1990), 194 Ill. App. 3d 676, 684-85, 551 N.E.2d 331, 336-37; *Cappitelli v. Rodewald* (1988), 171 Ill. App. 3d 875, 877-78, 525 N.E.2d 1037, 1038-39; *Diamond v. Board of Fire & Police Commissioners* (1983), 115 Ill. App. 3d 437, 445, 450 N.E.2d 879, 885; *Resman v. Personnel Board* (1981), 96 Ill. App. 3d 919, 921-22, 422 N.E.2d 120, 122; *Hoffman v. Board of Fire & Police Commissioners* (1980), 86 Ill. App. 3d 505, 507, 408 N.E.2d 98, 100.

■ Plaintiffs argue *Peters* is limited to municipalities adopting civil service under division 1 of article 10 of the Code. They contend since adoption of division 1 of article 10 of the Code is permissive, a municipality can enact ordinances that conflict with its provisions. However, they maintain division 2.1 of article 10 of the Code is mandatory, and therefore, home rule units cannot enact ordinances in conflict with its provisions. To support this argument, plaintiffs cite *People ex rel. Sanaghan v. Swalec* (1959), 22 Ill. App. 2d 374, 161 N.E.2d 352. *Sanaghan* held a board of fire and police commissioners was mandatory under the language of section 14—1 of the Revised Cities and Villages Act (Act) (Ill. Rev. Stat. 1957, ch. 24, par. 14—1) for municipalities not electing civil service. (*Sanaghan*, 22 Ill. App. 2d at 377, 161 N.E.2d at 354.) The language of section 14—1 of the Act is now contained in section 10—2.1—1 of the Code (Ill. Rev. Stat. 1991, ch. 24, par. 10—2.1—1). *Sanaghan*, a 1959 case, is no authority as to what statutes can be superseded by municipalities exercising

home rule powers. Home rule did not come into existence until the 1970 Constitution.

In the present case, division 2.1 of article 10 of the Code, which governs operation of the Board, was enacted prior to the effective date of the 1970 Illinois Constitution. The Normal ordinance conflicts with division 2.1 of article 10 of the Code by allowing the Board to delegate its temporary appointment power to the chief of police. The Code mandates this authority is vested solely with the Board. To the extent the ordinance and division 2.1 of article 10 of the Code conflict, the ordinance supersedes the statute and is valid. (*Stryker*, 62 Ill. 2d at 527, 343 N.E.2d at 922; *Mulligan*, 61 Ill. 2d at 550, 338 N.E.2d at 10-11.) The ordinance being valid, the rules promulgated pursuant to it are likewise valid. Given that the aforementioned cases allowed home rule units to regulate operation of the boards of fire and police commissioners, we cannot say the Normal ordinance regulates beyond "its government and affairs," in violation of section 6(a) of article VII of the Constitution (Ill. Const. 1970, art. VII, § 6(a)). Therefore, the circuit court properly granted summary judgment for the Board and denied summary judgment for plaintiffs.

Affirmed.

KNECHT, P.J., and STEIGMANN, J., concur.