THE CITY OF ROCKFORD, Plaintiff-Appellee, *v.* PAUL P. GILL, County Clerk, Winnebago County, Defendant-Appellant.

Second District    No. 77-481

Opinion filed May 11, 1978.

Daniel D. Doyle, State's Attorney, of Rockford (William H. Gates, Assistant State's Attorney, of counsel), for appellant.

A. Curtis Washburn, Stephen W. McCarty, and Connolly, Oliver, Goddard, Coplan & Close, all of Rockford, for appellee.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

This appeal involves the home rule provision of the Illinois Constitution 1970, article VII, section 6. Section 6(a) provides:

> "A County which has a chief executive officer elected by the electors of the county and any municipality which has a population of more than 25,000 are home rule units. Other municipalities may elect by referendum to become home rule units. Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt."

There is in the city of Rockford a public library organized in accordance with chapter 81 (Ill. Rev. Stat. 1975, ch. 81, par. 1—0.1 *et seq*) known as The Illinois Local Library Act. This act provides in section 3—1 thereof that:

> "* * * [T]he corporate authorities shall levy a tax for library purposes of not to exceed .15% of the value of all the taxable property in the city, as equalized or assessed by the Department of Local Government Affairs." Ill. Rev. Stat. 1975, ch. 81, par. 3—1.

The city of Rockford passed a tax levy ordinance for 1976 for library purposes based on a tax rate of .1604%. The Winnebago County clerk, Paul P. Gill, refused to extend the levy on that basis, contending that under The Illinois Local Library Act the tax levy for library purposes was limited to .15%.

The city filed a suit for declaratory judgment asking that the court declare that the city is entitled to the amount of taxes based on the .1604% levy, which it claims it is entitled to levy under its home rule powers to tax. The city also asked for an injunction to enjoin the county clerk from extending "any amount for the tax levies for library purposes as so levied by the City of Rockford in amounts less than the amounts provided for in said tax levy ordinances."

The library board sought and was granted leave to intervene in the case and adopted the pleadings of the city.

In his answer the county clerk raised two affirmative defenses, (1) that the tax rate for library purposes was limited by The Illinois Local Library Act to .15%; that the Rockford Public Library is a quasi-municipal corporation which is a separate entity organized under a separate and complete act; that the city is merely a catalyst for the board of directors through which the library tax is budgeted, levied and collected and that the "Home Rule" provisions of the Illinois Constitution of 1970 free home rule units from tax rates and debt limitations only in matters pertaining to the governmental affairs of the city and only insofar as they do not

conflict with "general statutes designed to provide an ordinary manner in the levy, extension and collection of taxes through the County"; (2) that the 1976 tax levy ordinance and the 1977 tax levy were illegal, null and void because in both years the city failed to allow 10 days between the passage of the appropriation ordinance and passage and publication of the tax levy ordinance; the 1976 appropriation ordinance having been passed on January 19, 1976, approved on January 22, 1976, and published January 28, 1976; whereas the tax levy ordinance was passed on January 22, 1976; the 1977 tax ordinance having been passed on February 28, 1977, approved on March 4 and published on March 11, but the tax levy itself having been passed on February 28, and approved on March 4.

After both sides had submitted briefs for the consideration of the court, the city moved for summary judgment, which the trial court granted. From the order of summary judgment, requiring the county clerk to extend the amounts levied for library purposes by the city council, notwithstanding the limitation in The Illinois Local Library Act, the county clerk appeals.

The question presented on this appeal may be stated in simple terms—do the home rule powers of the city of Rockford allow it to impose a tax rate for its local library in excess of the statutory limit stated in The Illinois Local Library Act under which the library was created?

While the issue may be thus simply stated, its resolution requires considerations of some conflicting and complex issues, the exact counterpart of which do not appear to have been considered in any previous Illinois decisions on home rule. However, while previous cases may not be controlling, they are a helpful guide in delineating fundamental public policy considerations which underlie the home rule provisions found in article VII, section 6(a) of the Illinois Constitution of 1970. The point of departure from previous concepts of the powers of municipal corporations appears in section 6(a) cited above.

■■ Thus, as pointed out in previous cases, the cities, by this section of the Constitution, can now do whatever they are not forbidden to do by the Constitution or the legislature, whereas formerly they could exercise only those powers specifically granted to them by the State.

By far the broadest and most inclusive power given to municipal corporations by the home rule provisions is the power to tax and it is not surprising that most of the cases which have arisen under the home rule provisions of the Constitution involve the taxing power. A review of some of the previous home rule cases may be helpful in rationalizing our decision here. *Kanellos v. County of Cook* (1972), 53 Ill. 2d 161, one of the earlier cases decided by the supreme court under home rule provisions, involved the authority of Cook County to issue bonds, rather than a question of taxation, but it may be pertinent here because it considered a

situation in which a prior restrictive statute was in conflict with the claimed home rule power to incur debt, without a referendum. In *Kanellos*, the county of Cook wanted to issue $10,000,000 in bonds without requiring a referendum approving such bond issue. The county claimed it had that right under section 6(a) of the Illinois Constitution of 1970. *Kanellos*, a taxpayer, contended the county's resolution authorizing the $10,000,000 was invalid as conflicting with section 40 of the counties act (Ill. Rev. Stat. 1969, ch. 34, par. 306), which required a referendum for the issuance of such bonds. The court held that the home rule provisions superceded the counties act and while the legislature, under the constitution retained the right to require a referendum if a three-fifths majority of the members so voted, the legislature had not so voted in this case and in the absence of such action by the legislature the home rule power prevailed over the restrictive statute. This was perhaps not a clear-cut confrontation between the statute and the home rule power, inasmuch as the court pointed out the statute had been enacted in 1969, and the concept of home rule was "foreign in the contemplation of legislation adopted prior to the 1970 Constitution." 53 Ill. 2d 161, 166-67.

In several other tax cases involving home rule powers, which have been cited by the city, there was not involved a competing or inconsistent statute such as in the case before us. Such cases as *Rozner v. Korshak* (1973), 55 Ill. 2d 430; *Paper Supply Co. v. City of Chicago* (1974), 57 Ill. 2d 553, and *Mulligan v. Dunne* (1975), 61 Ill. 2d 544, are not persuasive to the issue here since they involved the *scope* of the taxing power of home rule units, rather than a question of the precedence of a home rule power over the tax limitation in a particular statute. Thus, *Rozner* dealt with the question whether the "wheel" (vehicle) tax on Chicago residents was an actual tax or was a disguised license for revenue purposes, which the city, under the Constitution, had no power to enact, except as the legislature might allow. The supreme court decided it was an actual tax measure, falling within the home rule power to tax granted by section 6(a) of article VII of the Constitution. This decision, while significant as clarifying the distinction between taxes and licenses for revenue, sheds no light on the issue here. In *Mulligan*, a class action was instituted by manufacturers, wholesalers, retailers and consumers of alcoholic liquors seeking a declaratory judgment that a certain Cook County ordinance providing for a tax on the retail sale of alcoholic beverages—originally enacted May 5, 1975—exceeded the power to tax given by the home rule provision of the Constitution. The plaintiffs' theory was that because of the State's extensive taxation and regulation of the liquor industry, further taxation or regulation was of statewide interest, therefore not pertaining to the government and affairs of Cook County under the meaning of section 6. The supreme court, however, disagreed, saying:

"The only question then is whether the State has preempted the county's power to tax liquor by its legislation relating to the liquor industry. Section 6(g) of article VII of the 1970 Constitution allows the General Assembly to deny or limit the taxing power of a home-rule unit, but only by a law approved by three fifths of the members of each house. Since 'An Act relating to alcoholic liquors' (commonly referred to as the Liquor Control Act or the Dramshop Act) was passed long before the implementation of the 1970 Constitution, it clearly is not an effort by the General Assembly to deny or limit the power of home-rule units to tax liquor. The Act, although admittedly an extensive regulation of the liquor industry, is not specifically declared as exclusive in regard to liquor taxation and in fact recognizes the local interest in liquor control by allowing local governments broad authority regarding closing hours and Sunday sales and licensing, even allowing them the right to completely prohibit the sale of intoxicating beverages. (Ill. Rev. Stat. 1973, ch. 43, pars. 110 through 114, 129, and 166 *et seq.*) Cook County's tax ordinance does not conflict with any portion of the Act, but rather imposes a tax in addition to any imposed by the Act without any attempt to regulate those areas now regulated by the Act." 61 Ill. 2d 544, 549-50.

Thus, we see that neither a specifically limiting statute, enacted prior to the 1970 Constitution, nor a statewide regulating statute necessarily violates the home rule power of a municipality given under the 1970 Constitution. Moreover, we must be mindful of the statement of policy in section 6(m), article VII, of the 1970 Constitution to the effect that the powers granted under that section are to be liberally construed.

With the foregoing background we are now to decide whether the limitation on the library's taxing powers can be disregarded and that limit exceeded under the city's home rule powers.

Mindful as we are of the broad powers granted to the city under home rule provisions, we conclude that the power to increase the library tax rate can only be denied to the city if the statute under which the library was created and granted tax revenues evidences an intention not to make such library board subject to the city's home rule powers of taxation.

A brief look at the specific act authorizing the creation of a local public library is necessary at this point. The Illinois Local Library Act, section 2—2 (Ill. Rev. Stat. 1975, ch. 81, par. 2—2) provides for the "establishment and maintenance of a free public library in such incorporated town, village or township" by petition of 50 or more voters thereof, followed by an election in which the creation of such library is approved by a majority of the votes cast in such election. Library directors are to be chosen also at that election. The statute provides in section 3—1 thereof that the tax for library purposes shall not exceed ".15% of the value of all the taxable

property in the city, as equalized or assessed by the Department of Local Government Affairs." The Act goes on to provide:

> "If, however, the corporate authorities desire to increase the tax rate but not in excess of .40% of value for such purposes, the corporate authorities may, by ordinance, stating the tax rate desired, submit a proposition to the voters of the city at any general or special election. The ballot on which the proposition is submitted shall be in substantially the form prescribed in Section 3—3. If a majority of the votes cast upon the proposition are in favor thereof, the corporate authorities may thereafter levy annually a tax for library purposes at the authorized increased rate." Ill. Rev. Stat. 1975, ch. 81, par. 3—1.

Section 3—3 requires that an ordinance be adopted by the corporate authorities providing for the submission of the question of increasing the tax rate for library maintenance and operation in a special election, with notice and publication thereof. The exact proposition to be voted upon is set forth as follows:

| " Shall the annual library tax for maintenance and operation in (insert name of city) be increased from (insert present tax) to (insert proposed tax)? | NO | |
|---|---|---|
| | YES | " |

As we view it, there is no question but that The Illinois Local Library Act sets a tax rate limit of .15% and mandates an election to exceed this rate. It should be noted that the Act provides, also, that the monies collected from the library tax shall be deposited in a special fund and that "Expenditures from the library fund shall be under the direction of the board of library directors." Ill. Rev. Stat. 1975, ch. 81, par. 3—5.

Following the case of *People ex rel. Effertz v. Brzezinski* (1968), 91 Ill. App. 2d 202, in which the appellate court held that the village authorities had the power to reduce the appropriation submitted by the library board and reduce the tax levy accordingly, The Illinois Local Library Act was amended by the legislature. Whereas at the time of the *Brzezinski* decision section 3—5 had read "The library taxes provided for in this Article shall be levied and collected in like manner with other general taxes of the city * * *" (Ill. Rev. Stat. 1967, ch. 81, par. 3—5), the amended and present wording reads "The library taxes provided for in this Act shall be levied by the corporate authorities *in the amounts determined by the board* * * *" (emphasis added) (Ill. Rev. Stat. 1975, ch. 81, par. 3—5). While there is obviously no conflict between the library board and the city in this case, the amendment which followed the *Brzezinski* case indicates to us an intention by the legislature to guard the

local libraries against the expediencies of the moment as seen by the city fathers.

There are certain other aspects of The Illinois Local Library Act which also point to an intention by the legislature to create a separate and independent taxing body whose finances and administration will remain apart from the exigencies of municipal politics. First, there is the careful delineation of the method for increasing the tax rate—it must be by election called for that purpose and by a prescribed formula and it is a reasonable assumption that the electors who authorized the creation of the public library had such restrictions on increased taxation in mind when they voted to establish the library. The county clerk argues that the city is a mere catalyst in the levying and collection of taxes for the Rockford Public Library and was not intended to have the unlimited control over library taxation which it would exercise under its home rule powers as the city interprets them.

Secondly, we note that section 3—6 of The Illinois Local Library Act provides for the complete separation of the library taxes from other taxes levied by the City. Section 3—6 of the Act provides:

> "The library taxes provided for in this Article are in addition to all other taxes or tax rates authorized to be levied by any city, incorporated town, village or township and shall not be a part of the taxes making up any rate prescribed as a limitation on the amount of taxes any city, incorporated town, village or township may levy." Ill. Rev. Stat. 1975, ch. 81, par. 3—6.

■■ Lastly, we may take judicial notice of the fact that The Illinois Local Library Act has been amended by Public Acts Nos. 80-1152 and 80-1153, effective July 1, 1978 (Ill. Rev. Stat. 1977, Supp., ch. 81, par. 3—1). The amendment reiterates that the corporate authorities shall levy a tax not to exceed .15% of the value of all taxable property, and further provides for an additional tax rate of .02% for sites, buildings, building maintenance and equipment and repairs, but subject to the results of a special or general election, if such tax is objected to within 30 days of notice and publication by 10% of the voters. Inasmuch as this provision would not be appropriate or necessary if the legislature considered the city to have taxing power over and beyond the statute, under its home rule powers, we deduce that such unlimited taxing power for library purposes was not intended to be given under the home rule powers. This act of the legislature, spelled out in some detail, requiring an election for the library purposes specified therein, would be a futile gesture if the city could by interpreting "library purposes" as falling within the general phrase "governmental affairs" impose the same or a greater tax under its home rule powers.

As we have said, the power of taxation carries with it a certain measure

of control implicit in the option to withhold the exercise of that power, when an increase in the tax rate is necessary or desirable. Hence, the library board becomes involved in the city's financial picture and extraneous considerations are introduced which the legislature may not have intended or desired under The Illinois Local Library Act.

■■ For the reasons set forth we conclude that the city of Rockford did not have the power to exceed the tax rate mandated by The Illinois Local Library Act as part of its home rule powers.

In view of this result, we do not reach the question raised by defendant Gill as to the legality of the tax levy due to the timing of the appropriation and levy ordinances in relation to the publication thereof.

The judgment of the circuit court of Winnebago County is reversed and the case remanded for such procedure as is not inconsistent with this opinion.

Reversed and remanded.

SEIDENFELD, P. J., and GUILD, J., concur.