LEONA NELSON, Plaintiff-Appellant, v. CRYSTAL LAKE PARK DISTRICT, Defendant-Appellee.

Second District    No. 2—02—0799

Opinion filed August 27, 2003.—Rehearing denied September 25, 2003.

918

Michael E. Coppedge, of Cowlin, Naughton, Curran & Coppedge, of Crystal Lake, for appellant.

Matthew J. Egan, of Pretzel & Stouffer, Chtrd., of Chicago, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Leona Nelson, appeals the trial court's dismissal of her amended complaint against defendant, the Crystal Lake Park District. She argues that she stated a valid claim under section 1983 of the Civil Rights Act (42 U.S.C. § 1983 (2000)). We reverse and remand.

## I. FACTS

In her amended complaint, plaintiff alleged, *inter alia*, as follows. During the relevant period, she was an elected park commissioner for defendant, a municipal corporation. Her term was to expire on May 1, 2001. As an elected commissioner, she was "entitled to act in that capacity. Specifically, *** the *** Park [District] Code provides that Commissioners shall serve until their successors are elected and qualified. 70 ILCS 1205/2—12 [(West 2000)]."

Plaintiff alleged that on April 5, 2001, defendant's commissioners convened a meeting and voted to censure her for "the purported release of executive session material and the purported making of comments toward a Park District employee." The censure was a one-meeting suspension and was imposed "under the color of the statutes of the State of Illinois."

In effect at the time was a policy manual that defendant had previously adopted. Included in the manual was a sanctions policy that states as follows:

" 'If the conduct of a commissioner is deemed by a fellow commissioner to be inappropriate, the board [of commissioners] may discuss this behavior in Executive Session with the commissioner. If such actions do not cease, sanctions may be placed upon the commissioner, by a ⅔ vote, if he/she is found to be violating this section of policy. Sanctions may be in the form of meeting suspensions or monetary penalties.' "

Plaintiff alleged that, before suspending her, defendant "was required to discuss the asserted inappropriate conduct with Plaintiff in executive session." However, defendant "did not discuss the asserted inappropriate conduct with Plaintiff in executive session and instead voted to summarily suspend Plaintiff."

Plaintiff further alleged that defendant publicized the purported grounds for the suspension, which included the "wrongful *** assertion" that she had "sexually harassed a male employee of Defendant." She had lived in the community for more than 50 years and was caused to suffer "great embarrassment and humiliation in the community."

Plaintiff concluded that defendant had deprived her of "her statutory right to serve in her capacity as a duly elected public official," and she sought damages in excess of $50,000.

Defendant moved to dismiss the amended complaint. Although it purported to rely on section 2—619 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—619 (West 2000)), defendant argued that the complaint "fails to state a valid claim for relief against the Park District under Section 1983." Specifically, defendant asserted that plaintiff "has not alleged and cannot allege facts which establish that [defendant's] action on April 5, 2001 unlawfully deprived her of a property or liberty interest, which are essential elements for stating a cause of action."

The trial court agreed with defendant, ruling that plaintiff's allegations were "insufficient as a matter of law to state a cause of action under *** Section 1983." The court dismissed the amended complaint with prejudice, and plaintiff appealed.

## II. ANALYSIS

■ Initially, we must clarify the nature of defendant's motion. As we noted, defendant professed to rely on section 2—619 of the Code. When a party moves to dismiss under that statute, he admits the legal sufficiency of the cause of action but asserts an external defect or defense that defeats it. *Indesco Products, Inc. v. Novak*, 316 Ill. App. 3d 53, 55 (2000). However, in the substance of its motion, defendant argued that plaintiff had failed "to state a valid claim" because she had not alleged facts establishing "essential elements for stating a cause of action." Thus, defendant actually invoked section 2—615 of the Code (735 ILCS 5/2—615 (West 2000)), by which a party challenges the legal sufficiency of the cause of action. *Indesco Products, Inc.*, 316 Ill. App. 3d at 55. In dismissing the amended complaint as "insufficient as a matter of law," the trial court properly treated the motion as a section 2—615 motion, and we shall do so as well. See *Peterson v. Randhava*, 313 Ill. App. 3d 1, 9 (2000) ("the substance of the motion, not the title, should determine how the court should treat a motion").

A section 2—615 motion to dismiss presents the question whether a complaint's allegations, viewed in the light most favorable to the plaintiff, are sufficient to state a cause of action on which relief may be granted. The motion should be granted only if no set of facts could be proved that would entitle the plaintiff to recover. Our review of a dismissal is *de novo*. *Indesco Products, Inc.*, 316 Ill. App. 3d at 56.

### A. Section 1983

■ Section 1983 is a vehicle for vindicating a federal constitutional or statutory right that is deprived under the color of state law. 42 U.S.C. § 1983 (2000); *Stahl v. Village of Hoffman Estates*, 296 Ill. App. 3d 550, 558 (1998). Thus, a section 1983 claim will lie when a state

violates the due process clause of the fourteenth amendment to the federal constitution (U.S. Const., amend. XIV). To plead such a claim, a plaintiff must allege that a state actor deprived him of a property or liberty interest without due process of law. See *McAdoo v. Lane*, 564 F. Supp. 1215, 1221 (N.D. Ill. 1983); *Evers v. Edward Hospital Ass'n*, 247 Ill. App. 3d 717, 732 (1993).

### 1. *State Actor*

■ To plead this element, plaintiff alleged that defendant was a municipal corporation that suspended her under the color of state law. Defendant does not challenge the legal sufficiency of those allegations, as a park district is clearly a state actor. See *Smith v. Chicago Park District*, No. 98—C—1691, slip op. at ___ (N.D. Ill. January 11, 1999) (park district commissioner was state actor whom plaintiff could sue under section 1983). Thus, we move on to the remaining elements.

### 2. *Property Interest*

Plaintiff alleged that she was an elected park commissioner and that, under section 2—12 of the Park District Code (70 ILCS 1205/ 2—12 (West 2000)), she was entitled to serve until her successor was elected and qualified. On appeal, she argues that those allegations sufficed to establish that she had a property interest in her position. We agree.

■ A property interest is a legitimate claim of entitlement that stems not from the constitution but from an independent source such as state law. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 33 L. Ed. 2d 548, 561, 92 S. Ct. 2701, 2709 (1972). In *East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399 (1997), the supreme court considered whether state law conveys to an elected school board member a property interest in his office. The court noted section 10—10 of the School Code (105 ILCS 5/10—10 (West 2000)), which provides that a school board member "shall be elected for a term of 4 years." The court determined:

> "Statutes providing that an elected officer shall serve for a certain number of years and shall be removed only upon certain events *** give rise to an understanding or an expectation that that person will serve for the given length of time and will be removed for only the stated reasons." *East St. Louis*, 178 Ill. 2d at 417-18.

Thus, the court concluded that an officer who is elected under such terms "has a property right in his office and is to be afforded procedural due process protections." *East St. Louis*, 178 Ill. 2d at 418.

In *East St. Louis*, 178 Ill. 2d at 418, the supreme court relied on

*Crowe v. Lucas*, 595 F.2d 985 (5th Cir. 1979), which is particularly relevant here. In *Crowe*, a state statute provided that elected aldermen " 'shall hold their offices for a term of four years and until their successors are duly elected and qualified.' " *Crowe*, 595 F.2d at 993, quoting 6 Miss. Code Ann. § 21—15—1 (___). The court held that, because the statute established that an alderman was "entitled" to occupy his position until his successor was duly elected and qualified, he had a property interest in his office that could "be taken from him only by procedures meeting the requirements of due process." *Crowe*, 595 F.2d at 993.

The facts here are virtually identical to those in *Crowe*. Under section 2—12 of the Park District Code, park commissioners "shall be elected for 6 year terms" and "shall serve until their successors are elected and qualified." 70 ILCS 1205/2—12 (West 2000). In light of *East St. Louis* and *Crowe*, that statute conveyed to plaintiff a property interest in her office, and defendant could not deprive her of that interest without due process of law.

### 3. *Deprivation*

■ Defendant argues that plaintiff pleaded no deprivation of her property interest because she alleged that she was merely suspended for one meeting, not removed from office. However, defendant simply misunderstands the nature of a deprivation in this context.

> "A deprivation of constitutional dimensions occurs when the state stops the flow of benefits associated with a protected interest for any appreciable length of time. [Citations.] The duration of a suspension, since it directly relates to the severity of the deprivation, may be a factor to be weighed when *** determining what process is due. But the fact that benefits have merely been suspended briefly, rather than terminated, has never kept the state's action from being characterized as a deprivation." *D'Acquisto v. Washington*, 640 F. Supp. 594, 609-10 (N.D. Ill. 1986).

Here, plaintiff had a property interest in serving as a park commissioner, and she alleged that defendant interrupted that benefit with a one-meeting suspension. That suspension, though brief, was a deprivation of her interest.

### 4. *Liberty Interest*

■ Having pleaded that defendant deprived her of her property interest in her position, plaintiff further sufficiently alleged that defendant deprived her of her liberty interest in her reputation. It is well settled that a "stigma to one's reputation, inflicted by the state, is not of itself a deprivation of liberty within the meaning of the Fourteenth Amendment." *Colaizzi v. Walker*, 542 F.2d 969, 973 (7th

Cir. 1976). Nevertheless, under the so-called "stigma plus" test, a claim will lie when an affiliation exists between the stigma and the denial of a government benefit, *e.g.*, the deprivation of a property interest. See *Margoles v. Tormey*, 643 F.2d 1292, 1299 (7th Cir. 1981). The stigma, however, must be severe, the result of a charge "that might seriously damage [one's] standing and associations in his community." *Roth*, 408 U.S. at 573, 33 L. Ed. 2d at 558, 92 S. Ct. at 2707. A charge of dishonesty or immorality will suffice. *Roth*, 408 U.S. at 573, 33 L. Ed. 2d at 558, 92 S. Ct. at 2707.

Here, plaintiff alleged that defendant publicized the purported grounds for her suspension, which included her sexual harassment of defendant's employee. She further alleged that, as a result, she suffered "great embarrassment and humiliation in the community," where she had lived for more than 50 years. Clearly, plaintiff pleaded a severe stigma that stemmed from a charge of immoral conduct. She also pleaded an affiliation between that stigma and the deprivation of her property interest in her position. Thus, plaintiff sufficiently alleged the additional deprivation of her liberty interest in her reputation.

### 5. *Due Process*

■ Finally, plaintiff alleged that defendant denied her the process due under its sanctions policy by failing to discuss her purportedly inappropriate behavior with her in executive session. Defendant responds that, because the policy states only that it "may" discuss a park commissioner's behavior with the commissioner in executive session, it is not *required* to do so before imposing a sanction. The interpretation of the language of a policy manual is a legal question. *Anderson v. City of Wood Dale*, No. 93—C—425, slip op. at ___ (N.D. Ill. January 28, 1997).

Defendant asserts correctly that "may" is a permissive term, not a mandatory one. *Anderson v. Financial Matters, Inc.*, 285 Ill. App. 3d 123, 135 (1996). Thus, the first sentence of the sanctions policy demonstrates that a discussion in executive session is not mandatory *if the conduct of a commissioner is deemed inappropriate*. However, that is not the issue here. The issue is whether a discussion in executive session is mandatory *if a sanction is to be imposed*. To answer that question, we must read the policy as a whole. See *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 463 (1999).

The second sentence states that a sanction is available only if the commissioner's inappropriate actions "do not cease." As that sentence is modified by the first sentence, the clear meaning of the policy is that a sanction is available only if the actions do not cease after the

924

discussion with the commissioner in executive session, during which the commissioner is informed of what actions must cease. Indeed, to the extent that the second sentence purports to give the commissioner an opportunity to change his conduct and avoid a sanction, it would be meaningless if defendant were not required to give him notice of the conduct at issue. Notice, of course, is "a fundamental requirement of due process." *East St. Louis,* 178 Ill. 2d at 420.

Thus, in alleging that defendant sanctioned her without discussing her behavior with her in executive session, plaintiff sufficiently alleged that defendant violated its sanctions policy and denied her the process due.

### III. CONCLUSION

■ We conclude that plaintiff's amended complaint was legally sufficient to state a claim under section 1983. Accordingly, the judgment of the circuit court of McHenry County is reversed, and the cause is remanded.

Reversed and remanded.

GROMETER and CALLUM, JJ., concur.