2017 IL App (2d) 170758
No. 2-17-0758
Opinion filed December 29, 2017
Modified upon denial of rehearing February 16, 2018

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| ARTHUR G. JAROS, JR., | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 17-CH-1233 |
| | ) | |
| THE VILLAGE OF DOWNERS GROVE; | ) | |
| SUSAN FARLEY; LEAGUE OF WOMEN | ) | |
| VOTERS OF DOWNERS GROVE, | ) | |
| WOODRIDGE, AND LISLE; GREGORY | ) | |
| W. HOSE, Individually and in His Official | ) | |
| Capacity as Commissioner of the Village of | ) | |
| Downers Grove; ROBERT T. BARNETT, | ) | |
| Individually and in His Official Capacity | ) | |
| as Commissioner of the Village of Downers | ) | |
| Grove; and MARTIN T. TULLY, | ) | |
| Individually and in His Official Capacity as | ) | |
| Mayor of Downers Grove, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (The Village of Downers Grove; Gregory W. | ) | |
| Hose, Individually and in His Official | ) | |
| Capacity as Commissioner of the Village of | ) | |
| Downers Grove; Robert T. Barnett, | ) | |
| Individually and in His Official | ) | |
| Capacity as Commissioner of the Village of | ) | |
| Downers Grove; and Martin T. Tully, | ) | |
| Individually and in His Official | ) | Honorable |
| Capacity as Mayor of the Village of | ) | Paul M. Fullerton, |
| Downers Grove, Defendants-Appellees). | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Justices Hutchinson and Schostok concurred in the judgment and opinion.

## OPINION

¶ 1    In this interlocutory appeal, plaintiff, Arthur G. Jaros, Jr., challenges the denial of injunctive and declaratory relief under counts IV and V of his amended complaint against defendants, the Village of Downers Grove (Village); Susan Farley; League of Women Voters of Downers Grove, Woodridge, and Lisle; and certain Village officials. The underlying substantive question is whether the Village council had authority to remove plaintiff from the board of trustees for the Downers Grove public library prior to the expiration of his six-year term. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3    The following facts are undisputed. The Village is a home-rule unit under article VII, section 6(a), of the Illinois Constitution (Ill. Const. 1970, art. VII, § 6(a)). The Village has a commission form of government consisting of an elected mayor and an elected council. See Downers Grove Municipal Code § 2.10 (amended May 3, 2011). The Village also has appointed offices, including manager, clerk, treasurer, and attorney. See generally Downers Grove Municipal Code, ch. 2 (amended Dec. 15, 2015) ("Administration"). Also part of the Village's government are various commissions and boards, one of which is the library board of trustees (Village library board). See Downers Grove Municipal Code § 2.53 (amended Oct. 21, 2014). The Village library board oversees the Downers Grove public library (Village library), which was established pursuant to the Illinois Local Library Act (Library Act) (75 ILCS 5/1-0.1 *et seq.* (West 2016)).

¶ 4    In August 2015, plaintiff was appointed to the Village library board for a six-year term by the Village council pursuant to its appointment power under section 4-2 of the Library Act (75

ILCS 5/4-2 (West 2016)) and section 2.53(a) of the Village code (Downers Grove Municipal Code § 2.53(a) (amended Oct. 21, 2014)). Complementing the appointment power in section 2.53(a) of the Village code is section 2.53.1(d), which permits the Village council "to remove any member of a board or commission where such member is appointed by the Village council" (Downers Grove Municipal Code § 2.53.1(d) (amended June 5, 2007)).

¶ 5    On September 5, 2017, plaintiff filed a seven-count complaint against defendants. Plaintiff also filed a motion for a temporary restraining order and a preliminary injunction. Plaintiff sought to bar the Village council from voting—as it planned that evening—on a resolution to remove plaintiff from the Village library board. Following a hearing, the trial court denied the request for injunctive relief as premature. That evening, the Village council adopted Resolution No. 2017-66, removing plaintiff from the Village library board.

¶ 6    The next day, September 6, 2017, plaintiff filed his seven-count amended complaint. The only counts at issue in this appeal are counts IV and V. Count IV sought a declaratory judgment that the removal authorization in section 2.53.1(d) of the Village code exceeded the Village's home-rule powers. Count V sought an injunction barring plaintiff's removal from the Village library board.

¶ 7    Plaintiff also filed an amended motion for a preliminary injunction. Plaintiff made two main arguments. First, he contended that the Village library is a unit of government separate from the Village. Consequently, removal of a Village library board trustee by the Village (through its council) is not a "power [or] *** function pertaining to *its* [(the Village's)] government and affairs" (emphasis added) (Ill. Const. 1970, art. VII, § 6(a)) and so does not fall within the Village's home-rule powers. Second, since a home-rule unit requires an authorizing referendum in order to "alter or repeal a form of government provided by law" (Ill. Const. 1970,

- 3 -

art. VII, § 6(f)), and since the truncation of a library trustee's statutory six-year term (see 75 ILCS 5/4-2 (West 2016)) is such an alteration or repeal, the Village was required to pass such a referendum, which it did not.

¶ 8     At the hearing on the motion, plaintiff added a third contention, based on section 2.53.1(b) of the Village code and section 4-4 of the Library Act, entitled "Vacancies" (75 ILCS 5/4-4 (West 2016)).  Section 2.53.1(b) states that, "[w]here removal from a board or commission is governed by statute, such statute shall control."  Downers Grove Municipal Code § 2.53.1(b) (amended June 5, 2007).  Plaintiff construed section 4-4 as a statute governing removal, and he argued that his removal contravened the section.

¶ 9     In its oral ruling on the motion for injunctive relief, the trial court applied the three-part test set forth in *Schillerstrom Homes, Inc. v. City of Naperville*, 198 Ill. 2d 281, 289-90 (2001), for judging whether a home-rule unit has acted within the scope of its constitutional powers. (The supreme court has since reduced the test to two parts.  See *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶ 36).  Denying the motion, the court reasoned that (1) "the removal of library trustees *** relates to the government and affairs of [the Village]"; (2) the Library Act is "silent *** concerning removal of library trustees"; and (3) the "General Assembly [has] not preempted use of the home rule powers in this area."  The court further determined that the Village library is not a separate unit of government, given that the Village council appoints library trustees (75 ILCS 5/4-2 (West 2016)) and collects the tax for the library (75 ILCS 5/3-5 (West 2016)).

¶ 10     Although the court did not expressly address plaintiff's argument based on section 4-4 of the Library Act, the court remarked that section 4-4 was not a "removal statute."  Finding no likelihood of success on the merits, the court denied plaintiff's request for injunctive relief.

¶ 11    The court then *sua sponte* addressed count IV (declaratory judgment) of the amended complaint.  The court noted that its denial of injunctive relief was tantamount to a judgment declaring that section 2.53.1(d) of the Village code, authorizing the Village council to remove members of the library board, was within the Village's home-rule powers.  The court found, relative to the declaratory judgment, that there was no just reason for delaying enforcement or appeal.  See Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016) (allowing appeal of "a final judgment as to one or more but fewer than all of the parties or claims *** if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both").  The denial of injunctive relief under count V was immediately appealable as of right, without a special finding.  See Ill. S. Ct. R. 307(a) (eff. July 1, 2017) (appeal of "an interlocutory order *** granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction").

¶ 12    Plaintiff appeals.

¶ 13                                    II.  ANALYSIS

¶ 14    Plaintiff challenges the trial court's denial of his request for a preliminary injunction and the court's associated declaratory judgment.

¶ 15    The purpose of a preliminary injunction is to preserve the status quo pending a determination on the merits of the case.  *City of Kankakee v. Department of Revenue*, 2013 IL App (3d) 120599, ¶ 17.  A party seeking a preliminary injunction has the burden to establish the following elements:  (1) he has a clearly ascertainable right in need of protection; (2) he will suffer irreparable harm if the injunction does not issue; (3) he has no adequate remedy at law; and (4) there is a likelihood of success on the merits.  *Id.*  As the trial court did not hear evidence or make findings of fact on the motion for a preliminary injunction, but based its ruling purely on its interpretation of ordinances and statutes, our review is *de novo*.  See *Doe v. Department of*

*Professional Regulation*, 341 Ill. App. 3d 1053, 1060 (2003).  Since the declaratory judgment was likewise based on determinations of law alone, we also review it *de novo*.  *Fifield v. Premier Dealer Services, Inc.*, 2013 IL App (1st) 120327, ¶ 12.

¶ 16    Plaintiff reasserts on appeal the main contentions he made below.   We set aside for the moment his argument that the Village exceeded its constitutional home-rule powers in removing plaintiff from the library board, and we address first his argument that the removal was invalid on the independent ground that it "violated the terms of [the Village's] own ordinance," specifically section 2.53.1 of the Village code.  Section 2.53.1 states in its entirety:

"**Section 2.53.1. Removal of members to boards and commissions.**

(a) Members of any board or commission serve at the pleasure of the appointing authority and may be removed as provided in this section.

(b) *Where removal from a board or commission is governed by statute, such statute shall control.*

(c) The Mayor shall have the authority to remove any member of a board or commission where such member is appointed by the Mayor, or appointed jointly by the Mayor and Village Manager.

(d) The Village Council, by a vote of not less than four (4) members, shall have the authority to remove any member of a board or commission where such member is appointed by the Village Council; appointed by the Mayor with concurrence of the Village Council, or appointed by the Village Manager with the concurrence of the Village Council.

(e) The Village Manager shall have the authority to remove any member of a board or commission where such member is appointed by the Village Manager." (Emphasis added.) Downers Grove Municipal Code § 2.53.1 (amended June 5, 2007).

Citing subsection (b), plaintiff suggests that the removal of library board trustees is indeed "governed by statute," namely section 4-4 of the Library Act. Before setting forth section 4-4, we briefly explain how public libraries and their governing boards are established under the Library Act. The Library Act provides a process by which a city, village, or unincorporated town or township can form a public library. See 75 ILCS 5/1-2, 2-1, 2-2 (West 2016). A city may establish a public library simply by action of the corporate authorities. 75 ILCS 5/2-1 (West 2016). In villages and unincorporated towns or townships, a library may be established only by election. 75 ILCS 5/2-2 (West 2016).

¶ 17 Article 4 of the Library Act (75 ILCS 5/4-1 *et seq.* (West 2016)) prescribes the establishment of library boards of trustees and the selection of members. Section 4-1 (75 ILCS 5/4-1 (West 2016)) states that, once the corporate authorities in a city establish a library, "the mayor shall, with the approval of the city council," appoint a board of trustees. In an unincorporated town or township, or in a village not under the commission form of government, trustees are elected. 75 ILCS 5/4-3, 4-3.1 (West 2016). In a village under the commission form of government, such as the Village,

"the village council at its first regular meeting following the election establishing a public library, shall appoint a board of library trustees of 6 members who are village residents, 2 to hold until the first regular meeting of the next succeeding fiscal year, 2 to hold for one year thereafter and 2 to hold for 2 years thereafter. The respective successors of the

initial appointees shall be appointed for 6 year terms and shall serve until their successors are appointed and qualified.

Any board may provide by resolution that the term of its trustees shall be 4 years. If the board adopts such a resolution, then at the time the next appointments are made, one trustee shall be appointed for a 2 year term." 75 ILCS 5/4-2 (West 2016).

¶ 18    The only provision in article 4, or elsewhere in the Library Act, that refers to the removal of trustees is section 4-1.1 (75 ILCS 5/4-1.1 (West 2016)).  That section is entitled "Term of office; removal," and its subsection (b) provides that, in a city, "[t]he mayor may remove any trustee in the manner provided in Section 3.1-35-10 of the Illinois Municipal Code [(Municipal Code) (65 ILCS 5/3.1-35-10 (West 2016))]."  75 ILCS 5/4-1.1(b) (West 2016).  Section 3.1-35-10 of the Municipal Code specifies procedures for a mayor or president to "remove any officer appointed by the mayor or president under this Code."  65 ILCS 5/3.1-35-10 (West 2016).

¶ 19    We return to section 4-4 of the Library Act, the provision on which plaintiff relies. Section 4-4 specifies when a vacancy is to be declared in a library board of trustees:

"Vacancies shall be declared in the office of trustee by the board when the elected or appointed trustee declines or is unable to serve, or is absent without cause from all regular board meetings for a period of one year, or is convicted of a misdemeanor for failing, neglecting, or refusing to discharge any duty imposed upon a trustee by this Act, or becomes a nonresident of the city, village, incorporated town, or township, or who fails to pay the library taxes levied by the corporate authorities.  Vacancies shall also be declared in the office of trustee by the board when, at the election of the first board of library trustees or at any subsequent election, there are not sufficient trustees elected to fill an entire board of 7 trustees." 75 ILCS 5/4-4 (West 2016).

Section 4-4 proceeds to give directions for the filling of vacancies, depending on the unit of government involved. In a city or a village under the commission form of government, like the village, a vacancy "shall be reported to the mayor or president and be filled in like manner as original appointments" (75 ILCS 5/4-4 (West 2016)), which, in the case of the Village, would be appointment by the Village council (75 ILCS 5/4-2 (West 2016)).

¶ 20    Plaintiff suggests that section 4-4 governs the "removal" of library trustees, such that, by operation of section 2.53.1(b), the Village's authority to remove library trustees is limited to the situations specified in section 4-4.

¶ 21    The goal in interpreting a statute or ordinance is to ascertain the intent of the legislative body. *Henderson Square Condominium Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 67. The best indicator of that intent is the language used, which must be given its plain and ordinary meaning. *Id.*

¶ 22    Section 2.53.1(a) of the Village code states that the "[m]embers of any board or commission serve at the pleasure of the appointing authority and may be removed as provided in this section." Downers Grove Municipal Code § 2.53.1(b) (amended June 6, 2007). Section 2.53.1(d) provides that, by a vote of at least four members, the Village council may remove any board member or commissioner that the council appointed. Removal is left to the discretion of the Village council—subject to subsection (b), which states that "[w]here removal from a board or commission is governed by statute, such statute shall control." Downers Grove Municipal Code § 2.53.1(b) (amended June 6, 2007). Plaintiff views section 4-4 of the Library Act as just such a constraint on the Village council's discretion to remove board members or commissioners. Plaintiff is mistaken.

¶ 23   Section 4-4 specifies situations in which a vacancy in a library board of trustees arises by operation of law; when those circumstances arise, a vacancy must be declared. Plaintiff would have us read an implied limitation into section 4-4. There is at best an implied limitation on when vacancies *must be* declared. Section 4-4 does not speak at all to discretionary removal or to the creation of vacancies in situations other than those listed. From elsewhere in article 4, we can infer that the legislature was intentionally silent in section 4-4 as to the matter of discretionary removal. For instance, section 4-1.1(b) authorizes the mayor of a city to remove a library trustee. If this provision is not superfluous, as we must presume (*Moore v. Green*, 219 Ill. 2d 470, 488 (2006)), then the power of removal in section 4-1.1(b) extends beyond the scenarios listed in section 4-4. Also in operation here is the canon that, "when the legislature uses certain language in one part of a statute and different language in another, [the] court will presume that different results were intended." *Caveney v. Bower*, 207 Ill. 2d 82, 90 (2003). Sections 4-1.1(b) and 4-4 together establish that the legislature intended in section 4-4 to specify certain vacancies arising *ipso jure* and not to address the matter of discretionary removal. Since section 4-4 is not properly construed as a limitation on the discretionary removal of library trustees, it does not limit such removal as authorized by section 2.53.1(d) of the Village code.

¶ 24   We turn to plaintiff's argument that the removal authorization provided by section 2.53.1(d) of the Village code exceeds the Village's home-rule powers as applied to library trustees. Article VII, section 6(a), of the Illinois Constitution provides:

> "Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax, and to incur debt." Ill. Const. 1970, art. VII, § 6(a).

Home-rule authority is limited not only by the internal conditions in section 6(a) (the power or function must pertain to the government and affairs of the home-rule unit) but also by external limitations appearing elsewhere in section 6 ("Except as limited by this Section" (*id.*)). We address first plaintiff's claim that section 2.53.1(d) exceeds the limitations expressed in section 6(f) (Ill. Const. 1970, art. VII, § 6(f)). Section 6(f) states in relevant part:

> "A home rule unit shall have the power subject to approval by referendum to adopt, alter or repeal a form of government provided by law ***. A home rule municipality shall have the power to provide for its officers, their manner of selection and terms of office only as approved by referendum or as otherwise provided by law."

¶ 25    There is no dispute that the Village passed no referendum to permit the removal of library board trustees. In our view, none was required. Neither limitation in section 6(f) applies here. "Form of government" as referenced in the first limitation "involves the election of municipal governing boards and the relationship between the legislative and executive branches of government." *Peters v. City of Springfield*, 57 Ill. 2d 142, 149 (1974). First, section 2.53.1(d) does not impact the election of a municipal governing board, as the Village's library trustees are not elected but appointed by the Village council per the Library Act (see 75 ILCS 5/4-2 (West 2016)). Second, section 2.53.1(d) does not affect the balance between the legislative and executive branches of the Village's government. Two cases, *Pechous v. Slawko*, 64 Ill. 2d 576 (1976), and *Kotte v. Normal Board of Fire & Police Commissioners*, 269 Ill. App. 3d 517 (1995), provide a helpful contrast here.

¶ 26    In *Pechous*, the city council of Berwyn passed ordinances removing several incumbent city officials and appointing replacements. At the time, those offices were, under state statutes and Berwyn's own municipal code, to be filled by the mayor with the approval of the city

council. Statutes also provided that the mayor could remove any officer appointed by him. The supreme court held that the removal ordinances were an attempt to alter Berwyn's existing form of government by appropriating the executive branch's power of appointment and removal. As there was no referendum approval, the ordinances were invalid. *Pechous*, 64 Ill. 2d at 585.

¶ 27    In *Kotte*, the appellate court upheld an ordinance passed by the Town of Normal that permitted the chiefs of its fire and police departments to make temporary appointments. At the time, statutes gave a municipality's board of fire and police commissioners the exclusive power to make appointments. The court held that no referendum was required under section 6(f), because the ordinance did not "move any legislative authority to the executive branch nor *** move any authority that was originally in the executive branch to the legislative branch." *Kotte*, 269 Ill. App. 3d at 521. The court noted that Normal's board of fire and police commissioners was not itself Normal's "form of government." *Id.*

¶ 28    Here, section 2.53.1(d) is not an attempt by the Village council to arrogate to itself a conferred executive power. While the Library Act authorizes mayors in cities to remove library trustees (see 75 ILCS 5/4-1.1 (West 2016)), there is no analogous provision for mayors in villages. Consequently, no referendum was required for the removal power in section 2.53.1(d).

¶ 29    Also inapplicable here is the limitation in section 6(f) pertaining to "officers" of a home-rule unit. The supreme court has commented as follows on the concept of "officer" in section 6(f):

    "A reading of section 6(f) shows that its subject is the form of government of a
        home rule unit. If the form of structure of government is to be adopted, altered or
        repealed there must be an approval by referendum. When the section refers to a home
        rule municipality having the power to provide 'for its officers, their manner of selection

- 12 -

and terms of office only as approved by referendum or as otherwise authorized by law' the reference is to officers in the home rule unit's form of government. It is this character of officer whose office, manner of selection and term of office are to be subject to a referendum. There was no intendment by the constitutional convention that every person who might be said to be an 'officer' under that broad and accommodable term would be an officer within the meaning of section 6(f)." *Paglini v. Police Board*, 61 Ill. 2d 233, 236 (1975).

¶ 30 In *Paglini*, the supreme court rejected a challenge to a Chicago ordinance that permitted the city's police board to appoint hearing officers to make recommendations on cases before the board. The plaintiff contended that the hearing officers were "officers" under section 6(f) and that, therefore, a referendum was needed to approve their appointment. The court examined Chicago's governmental structure as set out in the Municipal Code (Ill. Rev. Stat. 1973, ch. 24, ¶ 21-1 *et seq.*). The court noted:

"These sections [of the Municipal Code] provide *inter alia* for a mayor [citation], a corporation counsel [citation], a city clerk and a city treasurer [citation], and aldermen [citation], all of whom may be considered to be officers in the city's form of government." *Paglini*, 61 Ill. 2d at 236-37.

The court determined that "[m]embers of the [b]oard *** are not officers in the form or structure of government of [Chicago] and are not officers within the meaning of section 6(f)." *Id.* at 237.

¶ 31 The Village's code establishes a governmental structure analogous to that of Chicago. In addition to an elected mayor and an elected council, there are appointed officers, including a manager, clerk, treasurer, and attorney. See generally Downers Grove Municipal Code, ch. 2 (amended Dec. 15, 2015) ("Administration"). In our view, the Village's library trustees are no

more "officers" under section 6(f) than were the members of Chicago's police board in *Paglini*. Consequently, plaintiff's argument based on section 6(f) fails.

¶ 32    We move to plaintiff's claim based on the internal constraints in section 6(a):  the power or function of the home-rule unit must pertain to its government or affairs.   "Home rule is based on the assumption that municipalities should be allowed to address problems with solutions tailored to their local needs."  *Palm*, 2013 IL 110505, ¶ 29.   "Section 6(a) was written with the intention to give home rule units the broadest powers possible."  *Id.* ¶ 30.  "Powers and functions of home rule units shall be construed liberally."  Ill. Const. 1970, art. VII, § 6(m).

¶ 33    The Illinois Constitution provides for the concurrent exercise of government functions by home-rule units and state powers.  "[H]ome rule units may continue to regulate activities even if the state has also regulated those activities."  *Palm*, 2013 IL 110505, ¶ 32.  "Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive."  Ill. Const. 1970, art. VII, § 6(i).  "Thus, the Illinois Constitution provides home rule units with the same powers as the sovereign, except when those powers are limited by the General Assembly."  *Palm*, 2013 IL 110505, ¶ 32.

¶ 34    Legislative limitations on home-rule powers must be express and specific.   "If the legislature intends to limit or deny the exercise of home rule powers, the statute must contain an express statement to that effect."   *Id.* ¶ 31.   "To restrict the concurrent exercise of home rule power, the General Assembly must enact a law *specifically* stating home rule authority is limited."  (Emphasis in original.)  *Id.* ¶ 32; see also Ill. Const. 1970, art. VII, § 6(h) ("The General Assembly may provide specifically by law for the exclusive exercise by the State of any

- 14 -

power or function of a home rule unit other than a taxing power or a power or function specified in subsection (*l*) of this Section [(Ill. Const. 1970, art. VII, § 6(*l*))].").

¶ 35 This requirement of specificity has also been codified. Section 7 of the Statute on Statutes (5 ILCS 70/7 (West 2016)) states:

> "No law enacted after January 12, 1977, denies or limits any power or function of a home rule unit, pursuant to paragraphs (g), (h), (i), (j), or (k) of Section 6 of Article VII of the Illinois Constitution, unless there is specific language limiting or denying the power or function and the language specifically sets forth in what manner and to what extent it is a limitation on or denial of the power or function of a home rule unit."

"Comprehensive legislation that conflicts with an ordinance is insufficient to limit or restrict home rule authority." *Palm*, 2013 IL 110505, ¶ 43.

¶ 36 As the supreme court explained in *Palm*, it formerly used a three-part test to determine whether a local government unit exceeded its home-rule authority:

> "Under that test, we first determined whether the disputed exercise of local government power pertains to local government and affairs as required under section 6(a). If so, we determined whether the General Assembly preempted the exercise of home rule powers in the area. If not, we determined 'the proper relationship' between the local legislation and the state statute." *Id.* ¶ 35 (quoting *Schillerstrom Homes*, 198 Ill. 2d at 289).

The test currently consists of only two parts: if a subject pertains to local government and affairs, and the legislature has not expressly preempted home rule, the exercise of municipal power is valid. *Id.* ¶ 36.

¶ 37 On the first prong of the test, plaintiff does not dispute that a municipality has an interest in the composition of the board of trustees of a library that was established within the

municipality's boundaries pursuant to the Library Act. While plaintiff suggests in his reply brief that *the State* also has an interest in the composition of local library boards, the presence of a State interest in an area does not, without more, bar the exercise of home-rule authority in that area. See *Blanchard v. Berrios*, 2016 IL 120315, ¶ 35 ("[T]he mere existence of State interest and activity in a particular subject matter is insufficient to preclude home rule authority."). Plaintiff frames the issue on appeal as involving not the power of a local unit to act in matters involving a State interest, but the power of one local unit over another in a matter that is of local interest and of interest to them both. According to plaintiff, since the Village library is**,** in plaintiff's view, a separate unit of government, the Village cannot claim that regulation of the Village library board's composition "pertain[s] to *its* [(the Village's)] government and affairs" (emphasis added) (Ill. Const. 1970, art. VII, § 6(a)).

¶ 38     Plaintiff cites several sources for (1) his view of the relationship between the Village and the Village library and (2) his claim that the relationship is relevant to a home-rule analysis. His approach is misconceived, as we will show.

¶ 39     For his claim that the library is a separate local unit of government, plaintiff relies foremost on this court's comment, in *City of Rockford v. Gill*, 60 Ill. App. 3d 94, 100 (1978) (*Gill I*), that the intent behind the Library Act was "to create a separate and independent taxing body whose finances and administration will remain apart from the exigencies of municipal politics." We said this in invaliding the City of Rockford's ordinance that imposed a tax—for funding the Rockford public library (Rockford library)—in excess of the maximum allowed under the Library Act (Ill. Rev. Stat. 1975 ch. 81, ¶ 3-1). The county clerk claimed that the tax was invalid because, *inter alia*, the Rockford library was "a quasi-municipal corporation which is a separate entity organized under a separate and complete act." *Gill I*, 60 Ill. App. 3d at 95. We

agreed that the Library Act manifested an intention to maintain the independence of local libraries. We noted, for instance, that the library tax was to be placed in a special fund, expenditures from which were under the direction of the library board (Ill. Rev. Stat. 1975, ch. 81, ¶ 3-5) *Gill I*, 60 Ill. App. 3d at 99. We also noted that the Library Act was recently amended to allow corporate authorities to impose an additional tax rate of 0.02%, subject to referendum if requested (Ill. Rev. Stat. 1977, Supp., ch. 81, ¶ 3-1). *Gill I*, 60 Ill. App. 3d at 100. Of this amendment, we said:

> "Inasmuch as this provision would not be appropriate or necessary if the legislature considered the City to have taxing power over and beyond the statute, under its home rule powers, we deduce that such unlimited taxing power for library purposes was not intended to be given under the home rule powers. This Act of the legislature, spelled out in some detail, requiring an election for the library purposes specified therein, would be a futile gesture if the City could by interpreting 'library purposes' as falling within the general phrase 'governmental affairs' impose the same or a greater tax under its home rule powers." *Id.*

¶ 40    Reversing our decision, the supreme court found that, in these last comments, we "misconceived the proper nature of the present inquiry." *City of Rockford v. Gill*, 75 Ill. 2d 334, 341 (1979) (*Gill II*). The proper question was whether the legislature "provided specifically for the exclusive exercise by the State" (Ill. Const. 1970, art. VII, § 6(h)) of the power to increase the tax for support of a local library. As the legislature had not expressly reserved for itself such exclusive authority, the City's ordinance was valid. *Gill II*, 75 Ill. 2d at 341.

¶ 41    In emphasizing the independence of the Village library from the Village, plaintiff takes the same approach that the supreme court rejected in *Gill II*. The starting point for the court in

*Gill II* was that Rockford had general home-rule authority over the Rockford library; the issue was whether the legislature had expressly curtailed that authority. The Rockford library and the Village library were created under the same statute; hence we are compelled by *Gill II* to start from the premise that the Village has home-rule authority over the Village library. As noted, plaintiff does not dispute that control over a local library board is a function pertaining to local government and affairs, even if the State has its own potential interest in the subject. The remaining question is whether the legislature has preempted home-rule authority in that area. Plaintiff makes no attempt to show preemption, and we note that the Library Act manifests no express intention to limit the home-rule authority of a municipality over a local library created within its boundaries. We recognize that the Library Act contains no provision for discretionary removal of trustees except in cities (75 ILCS 5/4-1.1 (West 2016)), but mere implication by the legislature is not sufficient to limit home-rule powers. See *Universal Outdoor, Inc. v. Village of Elk Grove*, 194 Ill. App. 3d 303, 307 (1990).

¶ 42    Plaintiff also misinterprets *Board of Education School District No. 150 v. City of Peoria*, 76 Ill. 2d 469 (1979), the second of the two main cases on which he relies. At issue in that case were ordinances passed by the City of Peoria that imposed taxes on amusements and on the purchase of food and beverages at taverns and restaurants. Both the Peoria school district and the Peoria park district challenged the validity of the taxes as applied to them. The court noted that there was no question of "the general authority of [Peoria] as a home rule unit to enact [the] taxing ordinances." *Id.* at 473. The question was whether Peoria's otherwise valid home-rule measures ran afoul of other constitutional restraints. The court upheld the taxes as applied to the park district but invalidated them as applied to the school district. *Id.* at 475-78.

¶ 43    The court held that the taxes exceeded the city's home-rule powers as applied to the school district, because they infringed on the "supremacy of the legislature with regard to schools and school districts under the 1970 Constitution" (*id.* at 476), specifically article X, section 1 (Ill. Const. 1970, art. X, § 1).  The court explained:

> "Pursuant to the constitutional mandate of the 1870 Constitution and of the 1970 Constitution, the legislature has enacted a comprehensive scheme for the creation, management and operation of Illinois schools.  The powers, duties and obligations of school boards are described in detail by the statutes.  [Citation.]  Thus the legislature, pursuant to the constitutional mandate, exercises plenary power over the Illinois school system.
>
> * * *
>
> *** As applied to [the school district] the two ordinances in question constitute an unauthorized regulation of the school district contrary to section 1 of article X of the Constitution of 1970."  *City of Peoria*, 76 Ill. 2d at 476-77.

¶ 44    As to park districts, the court noted that, although the General Assembly had enacted certain laws pertaining to those entities, it "did not thereby manifest an intent to assert exclusive statewide dominion."  *Id.* at 477.  The court could not "say that there exists a pervasive statewide interest in parks and park districts which prohibits a home rule unit from legislating in such a manner as to impose incidental obligations and burdens upon park districts."  *Id.*  Consequently, the court upheld the taxes as applied to the park district.  *Id.* at 478.

¶ 45    Plaintiff takes the holding in *City of Peoria* to mean that section 2.53.1(d) is valid as applied to the Village library board only if the legislature has granted the Village "direct and plenary" power over the Village library.  Plaintiff is confused.  The Village does not claim a

statutory grant of authority to remove library trustees, nor would any be necessary if the removal fell under its home-rule powers. As noted, *Gill II* undermines plaintiff's position that the Village lacks general home-rule authority over the Village library because, as plaintiff views them, they are independent entities.

¶ 46 Plaintiff additionally contends that the "traditional" home-rule powers of a municipality do not include the "exercise of powers over a sitting member of another unit of local government[.]" The cases he cites in no manner support his position. In *Scadron v. City of DesPlaines*, 153 Ill. 2d 164, 176 (1992), the supreme court recognized that "[m]unicipalities have traditionally played an important role in regulating outdoor advertising signs." In *Youngberg v. Village of Round Lake Beach*, 2017 IL App (2d) 160539, ¶ 6, this court noted that local units have an interest in protecting the health and welfare of their communities, including their aesthetic qualities. In *Peoples Gas Light & Coke Co. v. City of Chicago*, 125 Ill. App. 3d 95, 99 (1984), the appellate court affirmed the traditional zoning power of local units. Plaintiff appears to suggest that these holdings somehow implicitly exclude from a municipality the home-rule power to regulate the board of a local library created within the municipality's boundaries pursuant to the Library Act. This simply does not follow.

¶ 47 Plaintiff also claims that, when the Village Library Act (75 ILCS 40/0.01 *et seq.* (West 2016)) was amended in 1993 to bar the establishment of new libraries under that act (see Pub. Act 87-1032, § 1 (eff. Jan. 1, 1993) (amending 75 ILCS 40/5)), the " 'affairs' of village government no longer extend[ed] *** in plenary fashion to library functions." We fail to see how the amendment to the Village Library Act could have curtailed the constitutional home-rule powers of municipalities.

¶ 48    To summarize, plaintiff does not deny that a municipality has an interest in the composition of the board of a local library established within its boundaries pursuant to the Library Act. Rather, he unsuccessfully attempts to establish that, because the Village and the Village library are, in his view, separate units of government, the Village lacks the authority to remove a member of the Village library board prior to the expiration of his statutory term. The remaining question is whether the legislature has expressly limited the home-rule power of a municipality over a local library created within its boundaries. Plaintiff points to no such limitation.

¶ 49    Plaintiff's final contention is that the trial court, in making its rulings on count IV (declaratory judgment) and V (injunctive relief), failed to recognize plaintiff's constitutional liberty and property interests in his position as a library trustee. Notably, plaintiff has not made to the trial court or to this court any argument that he was not afforded due process of law in being removed from office. See, *e.g.*, *Nelson v. Crystal Lake Park District*, 342 Ill. App. 3d 917, 922 (2003) (the plaintiff could not be deprived of her property interest in local office without due process of law). Plaintiff develops no constitutional argument independent of his contention that the Village exceeded its constitutional home-rule powers. Plaintiff cites his liberty and property interests to support his claim that he will suffer irreparable harm if not granted injunctive relief. The trial court, however, must deny preliminary injunctive relief if the movant fails to establish any of the prerequisites for such relief. *Smith v. Department of Natural Resources*, 2015 IL App (5th) 140583, ¶ 27. As plaintiff failed to show a likelihood of success on the merits, the trial court was correct in denying the injunction.

¶ 50    Thus, we uphold the trial court's judgment declaring that section 2.53.1(d) of the Village code, as applied to the Village library trustees, is a valid exercise of the Village's home-rule

powers. Also, as plaintiff has not shown a likelihood of success on the merits, we affirm the denial of his request for a preliminary injunction barring the Village from removing plaintiff.

¶ 51    For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

¶ 52    Affirmed.